UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEBASTIAN CORREA MORALES, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 24-cv-7951 |
| vs. ) | |
| ) | |
| JULIANA ESCOBAR RESTREPO, ) | |
| ) | |
| Respondent. ) | |

**VERIFIED PETITION FOR RETURN OF THE CHILD TO COLOMBIA**

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001** *et seq.*

**I. Preamble**

1. This petition is brought by Sebastian Correa Morales ("Mr. Correa" or "Petitioner"), to secure the return of L.C., his four-year old son (the "Child"), who was, without Petitioner's consent or acquiescence, wrongfully retained from Colombia in the jurisdiction of this court by the Child's mother, Respondent Juliana Escobar Restrepo ("Ms. Escobar" or "Respondent") on or about May 16, 2024.

2. This petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (hereinafter "ICARA") 22 U.S.C. § 9001 *et seq*. The Convention came into effect in the United States on July 1, 1988 and was also

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986), a copy of which is attached hereto as Exhibit A.

1

ratified between the United States and Colombia on June 1, 1996. Copies of the Hague Convention and ICARA are annexed hereto as **Exhibit A** and **B,** respectively.

3. The Convention is a treaty between sovereign states, and theretofore entitled to the same weight and deference as the Constitution of the United States.

4. The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully removed in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Hague Convention, Art. 1.

5. The Hague Convention applies to cases in which one parent wrongfully removes or retains her or his child, who is under the age of 16 years, from the child's "habitual residence" in breach of the other parent's custodial rights, which were being exercised at the time of the wrongful retention of the child. Hague Convention, Art. 3.

6. Petitioner respectfully requests that pursuant to Articles 1(a) and 12 of the Convention, this Court order that the subject Child be returned to Colombia, the Child's habitual residence.

## II. Jurisdiction and Venue

7. This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

8. Venue is proper pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, the Respondent and the Child reside within this district in Queens County, New York; and because this case involves the retention of a child under the ages of 16 from his habitual residence of Colombia in the United States of America.

## III.  Facts

9. The parties are the parents of the subject Child. The parties and the Child are dual citizens of Colombia and the United States.

10. The parties were married on September 20, 2015, in Queens, New York. The parties moved to Florida in July 2019.

11. The subject child, L.C., was born on January 30, 2020, in Miami, Florida.

12. The parties lived in Miami until the family moved to Medellin, Colombia in December 2021.

13. The parties and the Child lived together as a family until the parties' marriage deteriorated. The parties began living in separate homes in August 2022. Albeit this change in circumstances, the parties were committed to co-parenting and raising the Child jointly.

14. The Child was fully acclimated to life in Colombia. L.C. attended the Cascanueces School in 2022 and continued his education at the Semillas del Futuro School in 2023, both in Colombia. He enjoyed a vibrant social life in Colombia with friends and family and actively participated in various activities, including horseback riding, BMX biking, and soccer. L.C. has been in Colombia since December 2021 and it is his home.

15. In January 2024, Ms. Escobar decided she wanted to temporarily move to Florida with the Child and expressed her desire to Mr. Correa.

16. Immigration authorities in Colombia told Petitioner that children with dual citizenship need authorization from the non-traveling parent to travel outside Colombia. To that end, Petitioner gave Respondent permission to remain in the United States with L.C. from January 26, 2024, until May 15, 2024 for tourism purposes. A copy of the travel authorization is annexed hereto as **Exhibit C.**

17. On January 26, 2024, Ms. Escobar and L.C. traveled to Orlando, Florida for their temporary stay.

18. Mr. Correa visited the Child in Orlando in February and April 2024.

19. On April 28, 2024, upon agreement of both parties, Petitioner had purchased one-way tickets for Respondent and the Child for May 16, 2024, from Orlando to Medellin, Colombia. A copy of the flight confirmation is annexed hereto as **Exhibit D.**

20. On May 2, 2024, Respondent informed Petitioner that she was visiting New York with L.C. to assist her mother who was undergoing surgery there.

21. On May 6, 2024, Respondent messaged Petitioner that she wanted to remain in New York for an extended period of time. Petitioner did not consent to this arrangement.

22. On May 14, 2024, the Respondent informed Petitioner that she would not be returning to Colombia with the Child. She stated that the Petitioner could visit and communicate with L.C. as usual but maintained that she would not be returning to Colombia.

23. On May 15, 2024, Respondent notified the Petitioner that she had cancelled the flights from Florida to Colombia originally scheduled for May 16, 2024. Respondent and the Child did not return to Colombia on May 16, 2024.

24. On June 20, 2024, Respondent advised Petitioner that she had enrolled L.C. in school in New York.

25. On June 21, 2024, Respondent informed Petitioner that she and the Child had moved to a different residence in Queens, New York.

26. On June 24, 2024, Petitioner asked Respondent for the exact address of where she was now living with L.C., but she refused to disclose her new address to Petitioner.

27. In July and August 2024, Respondent continued to withhold her address from the Petitioner.

28. On September 3, 2024, Petitioner was served with a summons from Queens Family Court regarding a petition for sole custody of the Child.[2] Petitioner learned of the Child's current address for the first time upon receiving the summons, as it was listed in one of the attachments.

29. On September 30, 2024, the Queens Family Court dismissed the petition against Mr. Correa without prejudice for lack of jurisdiction. Substantively, the Court held that "while the [Respondent's] relocation to Florida was with the consent of [Petitioner], it was a temporary arrangement between the parties and the intention was for [L.C.] to return to Colombia at the end of that time period, which was in May of 2024." Further, the Court held that "there is no dispute that [L.C.] resided with both parents in Colombia for a period of over two years, notwithstanding the parent's separation [in] Colombia." A copy of the dismissal order is annexed hereto as **Exhibit E.**

30. On October 10, 2024, Petitioner messaged the Respondent to arrange a visit to New York to see L.C. in mid-November. Ms. Escobar replied that she would not allow L.C. to stay with the Petitioner unless he presented a court order for visitation. Currently, the Petitioner's access to L.C. is limited to audio or video calls, but he continues to pursue a visit to New York to see the Child.[3]

---

[2] It was at this time that Petitioner was made aware that, on June 7, 2024, Ms. Escobar had previously filed a petition for sole custody of L.C. in Queens Family Court. On June 12, 2024, The Family Court stated that the allegations in the emergency motion did not constitute an emergency, as they were solely based on the parties' dispute regarding L.C.'s passport and the parties' desire to travel outside the United States with the Child.

[3] Since the wrongful retention on or about May 16, 2024, Petitioner has had overnight visits with L.C. in June, in particular from June 8, 2024, to June 16, 2024, and in August, in particular from August 22, 2024, to September 2, 2024. While Petitioner was in New York in September for the New York

31.     Petitioner has rights of custody to the Child as fully set forth below, and he had those same rights of custody on the date Respondent wrongfully retained the Child from his habitual residence of Colombia in the United States of America on or about May 16, 2024.

### IV. Wrongful Removal and Retention of Child by Respondent: Claim for Relief Under the Hague Convention

32.     A removal or retention of a child is wrongful under Article 3 of the Hague Convention if: (a) the removal of retention is in breach of custody rights attributed to a person, institution, or other body, either jointly or alone, under the law of the state in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention, those custody rights were actually exercised, or would have been exercised, but for the removal or retention of the child. *See* Hague Convention, Arts. 3 and 5.

33.     The Child's country of "habitual residence," as defined in Article 3 of the Hague Convention is Colombia, which is where the Child habitually resided prior to his wrongful retention in the United States beginning on or about May 16, 2024.

34.     From the totality of the circumstances perspective, as of the date of retention on or about May 16, 2024, Colombia was the Child's ordinary home. *See Monasky v. Taglieri*, 589 U.S. 68, 71 (2020) (a child's habitual residence depends on the totality of the circumstances specific to the case)

35.     The Child is fully involved and integrated in all aspects of daily and cultural life in Colombia. He benefited from a supportive environment, with access to family, consistent care, and all necessary resources to promote his development. He was enrolled in school, and he participated in

---

custody proceedings, which have now been dismissed due to lack of jurisdiction, the Court permitted L.C. to stay with Petitioner overnight from September 6, 2024, to September 8, 2024, and then from September 13, 2024, to September 15, 2024.

several extra-curricular activities, including horseback riding, BMX biking, and soccer. He had a caring support system of family and friends and was overall thriving in Colombia.

36. Petitioner has rights of custody of the Child within the meaning of Articles 3 and 5 of the Convention.

37. "Custody rights" under the Hague Convention are defined to include "rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence." *See* Hague Convention, Art. 5(a).

38. "Custody rights" "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." *See* Hague Convention, Art. 3.

39. At the time of Respondent's wrongful retention of the Child in the United States, the Petitioner had and continues to have rights of custody under Colombian law, such that the retention of the Child from Colombia is in violation of Colombian law and is a wrongful retention within the meaning of Articles 3 and 5 of the Hague Convention.

40. Petitioner has rights of custody pursuant to Colombian law. The right of *patria potestas* or "parental authority" under Colombian law arise from XIV of the Colombian Civil Code. Title XII of the Colombian Civil Code further sets forth the rights and duties between parents and children. Article 253 of the Civil Code provides that "[b]oth parents ... shall exercise the parental care in the upbringing and education of their legitimate children." *Aguirre v. Calle*, No. 08 CV 2613 SJ/SMG, 2008 WL 4461931 at *5 (E.D.N.Y. Oct. 3, 2008) citing *Garcia v. Angarita*, 440 F.Supp.2d 1364, 1375 (S.D.Fla.2006). Article 288 of the Civil Code provides that "[p]aternal authority is the set of rights that the law acknowledges to the parents over their non-emancipated children ...." It further provides that,

7

"[t]he exercise of the parental authority over their legitimate children shall be exercised jointly by both parents. In the absence of one of the parents, the other parent shall exercise the paternal authority." *Id.*

41. Moreover, Article 110 of the Law 1098 of 2006 Childhood and Adolescence Code provides that when a child or adolescent residing in Colombia is to travel abroad with one parent or with a person other than their legal representative, prior authorization must be obtained from the accompanying parent, duly authenticated before a notary or consular authority. Said permission must contain the place of destination, the purpose of the trip and the date of departure and re-entry to the country.[4] Petitioner authorized the travel of the Child to the United States until May 15, 2024, in compliance with this law and consistent with his custody rights. A copy of the travel authorization is annexed hereto as **Exhibit C.**

42. Notice is given in this pleading that the Petitioner is relying upon foreign law. Fed.R.Civ.P. 44.1.

43. At the time of the Respondent's wrongful retention of the Child, the Petitioner was exercising custody rights within the meaning of Articles 3 and 5 of the Convention, in that he is the father of the Child and has exercised custody rights over the Child since he was born.

44. L.C. was born in 2020 and will be 16 years of age in 2036. At the time immediately before the wrongful retention of the Child in the United States, the Child habitually resided in Colombia within the meaning of Article 3 of the Convention.

---

[4]   *See also Aguirre v. Calle*, No. 08 CV 2613 SJ/SMG, 2008 WL 4461931 at *5 (E.D.N.Y. Oct. 3, 2008) citing *Garcia v. Angarita*, 440 F.Supp.2d 1364, 1375 (S.D.Fla.2006) *(*"Article 338 of the Colombian Minors' Code provides that, "[w]hen a minor is going to go out of the country with one of the parents or with a person different from their legal representatives, they should previously obtain the permission of the parent or legal representative who is not traveling, authenticated before a notary or consular authority.") This law has since been repealed; however, its principle is now embodied in Article 110 of Law 1098 of 2006 Childhood and Adolescence Code.

45. Since December 2021, the parties and Child resided in Colombia. Respondent and the Child first left to the United States on or about January 26, 2024.

46. Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the Child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with the Child.

47. Following the Respondent's wrongful retention of the Child in the United States, the Child is being illegally held in custody, confinement and/or restraint by the Respondent in the Eastern District of New York. Upon information and belief, Respondent is keeping the Child in Queens, New York.

48. The subject Child is now four years old. The Hague Convention applies to children under 16 years of age, and thus applies to this Child. Petitioner has never consented or acquiesced to Respondent's wrongful retention of the Child in the United States.

49. Petitioner invokes Article 18 of the Convention, which grants this Court plenary power to order the Child's return at any time.

50. In accordance with the Article 18 equitable return factors set forth in Justice Alito's concurring opinion in *Lozano v. Montoya Alvarez*, 134 S.Ct. 1224 (2014), Petitioner requests that this Court exercise its equitable discretion to return the Child to Colombia under Article 18, even if the Respondent establishes one of the Convention's five narrow discretionary exceptions to return under the Convention.

51. The Child has an interest in returning to Colombia, his country of habitual residence. Petitioner has an interest in exercising his Colombian rights of custody in Colombia.

52. The governments of Colombia and the United States both have an interest in discouraging inequitable conduct and deterring international child abductions.

### V. Provisional Remedies

53. Petitioner requests that the Court issue a Show Cause Order forthwith, ordering the appearance of Respondent before this Court on the first available date on the Court's calendar.

54. Petitioner further requests that this Court issue a Scheduling Order setting an expedited hearing on the Verified Petition for Return of the Child to Colombia.

### VI. Attorney's Fees and Costs

55. Petitioner has incurred attorneys' fees and costs resulting from the Respondent's wrongful retention of the Child.

56. Petitioner respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to date as required by 22 U.S.C. § 9007.

57. Petitioner will submit a copy of all expenditures as soon as practicable and possible, and will amend these costs from time to time, according to proof and in light of further expenditure resulting from Respondent's wrongful retention of the Child.

### VII. Notice of Hearing

58. Pursuant to 22 U.S.C. § 9003(c), Respondent will be given notice of any hearing pursuant to Washington and any other applicable law.

### VIII. Relief Requested

**WHERETOFORE**, it is respectfully requested that the following relief be granted:

a. Set an expedited hearing on the petition and communicate that hearing date and time to petitioner so that petitioner may provide notice of these proceedings and the hearing pursuant to ICARA Section 9003(c);

b. Issue an order following the hearing, directing that the Child shall be returned to his Habitual Residence of Colombia, pursuant to Article 12 of the Convention;

c. Enter an immediate *ex parte* temporary restraining order prohibiting the retention of the Child from the jurisdiction of this Court pending a hearing on the merits of the Verified Petition, and further providing that no person acting in concert or participating

      with Respondent shall take any action to remove the Child from the jurisdiction of this Court pending a determination on the merits of this case;

d. Issue an immediate order that Respondent surrender any and all of her passports and all of the passports of the Child;

e. Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the Child's wrongful retention pursuant to 22 U.S.C. § 9007; and

f. Any such further relief as justice and its cause may require.

Date: November 14, 2024

                                            Respectfully submitted,

                                            /s/ Richard Min
                                            Richard Min, Esquire, *pro hac vice*
                                            Green Kaminer Min & Rockmore LLP
                                            420 Lexington Avenue, Suite 2821
                                            New York, New York 10170
                                            Telephone: 212-681-6400
                                            Facsimile: 212-681-6999
                                            Email: rmin@gkmrlaw.com

                                            *ATTORNEY FOR PETITIONER*
                                            *SEBASTIAN CORREA MORALES*

## **VERIFICATION**

I, Sebastian Correa, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America, that I am the Petitioner in the within action and have read the foregoing Petition and know the contents of the foregoing Petition are true, to the best of my knowledge, except as to those matters alleged upon information and belief.

Dated: November 14, 2024

_____
Sebastian Correa Morales