**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————————

In the Matter of L.C.            )

                               )

SEBASTIAN CORREA MORALES   )

                               )

           Petitioner,        )

                               )

vs.                               )      Case No. 1:24-cv-07951

                               )

JULIANA ESCOBAR RESTREPO,    )

                               )

           Respondent.       )

———————————————————————)

**PETITIONER'S MOTION TO EXPEDITE PROCEEDINGS AND ISSUANCE OF
SHOW CAUSE ORDER, INCLUDING TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND EXPEDITED SCHEDULING ORDER**

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague
on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 _et seq._**

Petitioner, Sebastian Correa Morales ("Mr. Correa" or "Petitioner"), respectfully submits this Motion for the scheduling of an expedited hearing and other relief related to the Verified Petition for the Return of the Child to Colombia ("Petition" or "Verified Petition").[1]

## I.      INTRODUCTION

Petitioner seeks relief from this Court, in the form of an order for the return of the Child to Colombia under the Convention on the Civil Aspects of International Child Abduction (the "Hague

---

[1]     Petitioner relies upon the facts he has verified in his Petition for the Return of the Child to Colombia pursuant to the Hague Convention filed under The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention" or the "Convention") and the International Child Abduction Remedies Act ("ICARA"). _See_ T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, _reprinted_ in 51 Fed. Reg. 10493 (1986), text available at: https://www.hcch.net/en/instruments/conventions/specialised-sections/child-abduction (last accessed March 31, 2022); 22 U.S.C. § 9001 _et seq._ (2016). ECF No. 1.

Convention" or the "Convention").  Oct. 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98 (a copy of the Hague Convention is attached as Exhibit A to the Verified Petition; ECF No. 1-1). The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.  Convention, art 1.  Specifically, the Petition seeks an order for the return of the Child, under Articles 8 (providing a right of action to a person exercising rights of custody and 12 (providing for the return of the child as a remedy) of the Hague Convention, as well as under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9010 (a copy of ICARA is attached as Exhibit B to the Verified Petition; ECF No. 1-2).

## II.    BACKGROUND

The facts are fully laid out in the Verified Petition but are recited here succinctly for context.

The parties are the parents of the subject Child. The parties and the Child are dual citizens of Colombia and the United States. The parties were married on September 20, 2015, in Queens, New York and they moved to Florida in July 2019. The subject child, L.C., was born on January 30, 2020, in Miami, Florida. The parties lived in Miami until the family moved to Medellin, Colombia in December 2021.

The parties and the Child lived together as a family until the parties' marriage deteriorated. The parties began living in separate homes in August 2022. Albeit this change in circumstances, the parties were committed to co-parenting and raising the Child jointly.

The Child was fully acclimated to life in Colombia. L.C. attended the Cascanueces School in 2022 and continued his education at the Semillas del Futuro School in 2023, both in Colombia.

He enjoyed a vibrant social life in Colombia with friends and family and actively participated in various activities, including horseback riding, BMX biking, and soccer. L.C. has been in Colombia since December 2021, and it is his home.

In January 2024, Ms. Escobar decided she wanted to temporarily move to Florida with the Child and expressed her desire to Mr. Correa. Immigration authorities in Colombia told Petitioner that children with dual citizenship need authorization from the non-traveling parent to travel outside Colombia. To that end, Petitioner gave Respondent permission to remain in the United States with L.C. from January 26, 2024, until May 15, 2024, for tourism purposes (a copy of the travel authorization is attached as Exhibit C to the Verified Petition; ECF No. 1-3).

On January 26, 2024, Ms. Escobar and L.C. traveled to Orlando, Florida for their temporary stay. Mr. Correa visited the Child in Orlando in February and April 2024. On April 28, 2024, upon agreement of both parties, Petitioner had purchased one-way tickets for Respondent and the Child for May 16, 2024, from Orlando to Medellin, Colombia (a copy of the flight confirmation is attached as Exhibit D to the Verified Petition; ECF No. 1-4).

On May 2, 2024, Respondent informed Petitioner that she was visiting New York with L.C. to assist her mother who was undergoing surgery there. On May 6, 2024, Respondent messaged Petitioner that she wanted to remain in New York for an extended period of time. Petitioner did not consent to this arrangement.

On May 14, 2024, the Respondent informed Petitioner that she would not be returning to Colombia with the Child. She stated that the Petitioner could visit and communicate with L.C. as usual but maintained that she would not be returning to Colombia. The day after, Respondent notified the Petitioner that she had cancelled the flights from Florida to Colombia originally

scheduled for May 16, 2024. Respondent and the Child did not return to Colombia on May 16, 2024.

On June 21, 2024, Respondent informed Petitioner that she and the Child had moved to a different residence in Queens, New York. She refused to disclose the new address to Petitioner. On September 3, 2024, Petitioner was served with a summons from Queens Family Court regarding a petition for sole custody of the Child. It was at this time that Petitioner was made aware that, on June 7, 2024, Ms. Escobar had previously filed a petition for sole custody of L.C. in Queens Family Court. Petitioner learned of the Child's current address for the first time upon receiving the summons, as it was listed in one of the attachments.

On September 30, 2024, the Queens Family Court dismissed the petition against Mr. Correa without prejudice for lack of jurisdiction. Substantively, the Court held that "while the [Respondent's] relocation to Florida was with the consent of [Petitioner], it was a temporary arrangement between the parties and the intention was for [L.C.] to return to Colombia at the end of that time period, which was in May of 2024." Further, the Court held that "there is no dispute that [L.C.] resided with both parents in Colombia for a period of over two years, notwithstanding the parent's separation [in] Colombia." (a copy of the order of dismissal is attached as Exhibit E to the Verified Petition; ECF No. 1-4).

The Hague Convention was drafted for this precise circumstance – "[t]o address the problem of international child abduction during domestic disputes." *Monasky v. Taglieri*, 140 S.Ct. 719, 723 (2020).

## III.    PURPOSES AND PERTINENT PROVISIONS OF THE HAGUE CONVENTION

The Convention on the Civil Aspects of International Child Abduction (the "Convention" or the "Hague Convention") came into effect in the United States of America on July 1, 1988 and

came into force and effect between the United States of America and Colombia on June 1, 1996. Essentially, it is an international treaty designed to prevent abduction or wrongful retention from a parent absconding with a child and running to another jurisdiction to litigate custody. Indeed, the Federal implementation of this accord, in Section 9001(a)(2) of the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-9010 (1989), includes the expressed Congressional finding that "[p]ersons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention."

The Convention is to be given uniform international interpretation. 22 U.S.C. § 9001. The opinion of sister signatories to the Convention are entitled to significant weight. *Air France v. Saks*, 470 U.S. 392, 404 (1985). "Treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Chocotaw Nation of Indians v. United States*, 318 U.S. 423, 431-32 (1943); *Saks*, 470 U.S. at 396; *Sale v. Haitian Ctrs. Council*, 509 U.S. 155, 155 (1993).

Article 1 of the Convention states that the Convention's goals are:

(a)     to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

(b)     to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

Article 3 of the Convention provides, in pertinent part, that:

The removal or the retention of a child is to be considered wrongful where –

(a)     it is in breach of rights of custody of a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention; and

(b)     at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

5

The rights of custody mentioned in sub-paragraph (a) above are those as determined in the state of the habitual residence of the child and may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Article 4 of the Convention provides that the Convention "shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights."

Article 5(a) of the Convention provides that, within the meaning of the Convention, "rights of custody shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence."

In Article 14, the Convention also dictates that "[i]n ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable."

In the primary source of interpretation for the Convention, the Explanatory Report, Professor E. Pérez-Vera noted that any exceptions to the return of the child to her habitual residence:

> . . . are to be interpreted in a restrictive fashion if the Convention is not to become a dead letter. In fact, the Convention as a whole rests upon the unanimous rejection of this phenomenon of illegal child removals and upon the conviction that the best way to combat them at an international level is to refuse to grant them legal recognition. The practical application of this principle requires that the signatory States be convinced that they belong, despite their differences, to the same legal community within which the authorities of each State

acknowledge that the authorities of one of them—those of the child's habitual residence are in principle best placed to decide upon questions of custody and access.  As a result, a systematic invocation of the said exceptions, substituting the forum chosen by the abductor for that of the child's residence, would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration.[2]

## IV.    PETITIONER IS ENTITLED TO AN EXPEDITED HEARING

The Hague Convention contemplates an outside limit of six (6) weeks for the determination of the merits of a wrongful removal or retention case from the date of filing.  Convention, art. 11.

ICARA therefore establishes that Hague Convention cases should not follow the standard civil action schedule.   Rather, Contracting States "shall use the most expeditious procedures available":

> Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention.  For this purpose they shall use the most expeditious procedures available.
>
> *            *            *
>
> The judicial or administrative authorities of Contracting States shall act *expeditiously* in proceedings for the return of children.
>
> If the judicial or administrative authority has not reached a decision *within six weeks* from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay . . .

Convention, arts. 2 and 11 (emphasis added).

---

[2]     Elisa Pérez-Vera, Explanatory Report: Hague Conference on Private International Law in 3 Acts and Documents of the Fourteenth Session ("Explanatory Report") 34, at 22-23.

The Supreme Court has recently reiterated that Contracting States to the Convention must "'use the most expeditious procedures available' to return the child to her habitual residence." *Monasky*, 140 S. Ct. at 724. "The Hague Convention mandates the *prompt* return of children to their countries of habitual residence." *Chafin v. Chafin*, 133 S.Ct. 1017, 1028 (2013) (emphasis added).

It is therefore well-settled that Hague Convention cases should not proceed with the issuance of a writ of summons, twenty (20) days for the filing of a responsive pleading and establishment of a scheduling order. These cases must be expedited and must proceed first with the immediate issuance of a show cause order, then appearance of the respondent and child or children at an initial expedited show cause and scheduling hearing, and then the case proceeds to an expedited evidentiary hearing on the petition for return.

United States federal courts have routinely held that show cause orders are appropriate in these cases. *See, e.g., Alcala v. Hernandez*, No. 4:14-CV-4176-RBH, 2014 WL 5506739, at *2 (D.S.C. Oct. 30, 2014) ("the court is permitted to implement all necessary procedures 'to prevent the child's further removal or concealment before the final disposition of the petition.'").

Notice of such hearings is to be provided in accordance with notice under inter-state custody laws. ICARA at § 9003. In New York, the Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA") is the State's inter-state custody law and provides merely that "notice must be given in a manner reasonably calculated to give actual notice but may be by publication if other means are not effective." DRL § 75-g(1).

Courts around the country have approved this approach. The United States District Court for the District of Maryland observed and instructed that:

> Unquestionably at the heart of the Convention is prompt action by
> courts. Convention art. 11 . . . This comports with the obvious

8

> desideratum that any dispute involving custody of a child be decided quickly so as to minimize the anxiety and unsettlement of the child and to avoid assimilation of the child into strange environs which could lead to subsequent difficulties in separation.
>
> The rules of procedure applicable to ordinary civil cases would seem to be at odds with the Convention and ICARA's premium on expedited decision-making. Twenty days to answer a petition, Fed. R. Civ. P. 12(a)(1)(A), utilization of various discovery devices, Fed. R. Civ. P. 33 (interrogatories); Fed. R. Civ. P. 31 (depositions), and extended trial time work at cross-purposes to the objective of prompt disposition.

*Zajaczkowski v. Zajaczkowska*, 932 F. Supp. 128, 130 (D. Md. 1996), *aff'd* by 1997 U.S. App.

LEXIS 10154 (4th Cir. 1997) (citations omitted).

The United States Court of Appeals of the Ninth Circuit observed and instructed that:

> The Convention imposes a double duty of "the use of the most speedy procedures known to [a State's] legal system" and "that applications are, so far as possible, to be granted priority treatment." Pérez–Vera Report, supra, ¶ 104. While we underscore the importance of district courts adjudicating Convention petitions expeditiously, we empathize with the difficulty in reaching speedy, yet thorough, decisions in the face of severely strained judicial resources.
>
> For now, we urge courts to give docket priority to Convention petitions and to seek means of expediting the petitions to the extent possible and practicable. These cases are always heart-wrenching, and there is inevitably one party who is crushed by the outcome. We cannot alleviate the parties' emotional trauma, but at a minimum we can hope to provide them and their children with a prompt resolution so that they can escape legal limbo.

*Holder v. Holder*, 392 F.3d 1009, 1023 (9th Cir. 2004).

In addition, 28 U.S.C. § 1657 states, in pertinent part, as follows:

> [T]he court shall expedite the consideration of any action . . . if good cause therefore is shown. For purposes of this subsection, "good cause" is shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit.

Applying Section 1657 here, the Hague Convention is a treaty under Article VI of the United States Constitution and such cases are governed by statute, namely 22 U.S.C. § 9001, et seq.  The instant Hague Convention case presents a factual context indicating this request for expedited consideration has merit.  Thus, good cause exists and "the court shall expedite the consideration of" this action.  28 U.S.C. § 1657.

The importance of securing the attendance of Respondent through the mechanism of a Show Cause Order cannot be underestimated.  ICARA is unequivocal that a Hague Convention petitioner can only bring a Hague Convention action in the place where the child is actually located.  ICARA at § 9003.

Petitioner recognizes and appreciates that there are numerous other cases pending before this Court.  But for Respondent's wrongful retention of the Child, which caused the filing of this action, Petitioner would not now be seeking expedited issuance of the Show Cause Order and expedited consideration of the merits of this case.

In accordance with the Hague Convention, ICARA, 28 U.S.C. § 1657, and the Supreme Court of the United States' requirement of the use of the most expeditious procedures available, this Court should enter a Show Cause Order forthwith in the form submitted to this Court, setting a date for Respondent, on the first date available on the Court's calendar allowing for full resolution of this matter within six (6) weeks of the date of filing this Request.

## V.    PETITIONER'S PRIMA FACIE CASE

The general framework to establish a case for return under ICARA is to prove by the preponderance of the evidence, that a child has been wrongfully retained within the meaning of the Hague Convention.  22 U.S.C. § 9003(e)(1)(A).  Under the Hague Convention, a removal or retention is considered "wrongful" where:

10

(a)     it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

(b)     at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for removal or retention.

Hague Convention, art. 3.

The fundamental inquiry in any case under the Hague Convention is the habitual residence of the children. The habitual residence in turn dictates the local law to be applied in determining the question of custody rights in the habitual residence. The Child's habitual residence at the date of retention, within the meaning of the Hague Convention, was Colombia. The habitual residence is determined at the point in time "immediately before the removal or retention." Convention, art. 3. To determine the child's habitual residence, courts are to look at the totality of the circumstances specific to each case. *Id*. at 723. The Supreme Court noted that the habitual residence inquiry is fundamentally one of "[c]ommon sense." *Id*. at 727.

In the present case, the Child was living in Colombia since December 2021. He was enrolled in school and participated in social and extracurricular activities. Colombia was clearly the Child's habitual residence at the time of the wrongful retention and remains as such, despite Respondent's unilateral decision to wrongfully retain the Child in the United States without Petitioner's consent.

The second part of the prima facie analysis is determining whether the Child's removal or retention in another country is wrongful by the law of the country where the child is from, not where he has been abducted to. Specifically, the Hague Convention provides that the removal is wrongful where "it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child

11

was habitually resident immediately before the removal or retention." Hague Convention, art. 3(a). The purpose of this provision is to make sure that the law of the child's habitual residence follows the child, so the abducting parent does not profit by his or her wrongful act and otherwise restores the status quo before the wrongful retention occurred.

Simply put, the left-behind parent must merely have rights relating to the care of the child and the right to determine where the child lives, and they do not need to be exclusive to him. In this case, Petitioner had rights of custody pursuant to Colombian law, namely, Article 253 and Article 288 of the Colombian Civil Code. [ECF No. 1, at Page 7, Para. 40].

Finally, Petitioner must demonstrate that he was exercising his rights of custody (referred to as "parental authority" in this case) or would have been if not for the wrongful removal or retention. Petitioner has always maintained a close relationship with the Child from his birth. Petitioner would see the Child on a continuous basis in Colombia before Respondent and the Child left for Florida in January 2024. While the Child was living in Orlando, Petitioner went to visit him twice – in February and in April. Therefore, Petitioner was clearly exercising his rights of parental authority and would have continued to do so if not for Respondent's actions in abducting the Child to the United States. "In the context of custody, the term 'exercise' is liberally construed and will be found 'whenever a parent with de jure custody rights keeps, or seeks to keep, any sort of regular contact with his or her child.'" *Bader v. Kramer*, 484 F.3d 666, 671 (4th Cir. 2007) (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1065 (6th Cir. 1996) ("Friedrich II")).

    a.  <u>Mandatory Return</u>

The Petitioner in a Hague Convention case has the burden of proving wrongful removal under the terms of the Convention by a preponderance of the evidence. 22 U.S.C. § 9003(e)(A).

Once this has been determined, if the return proceedings are commenced within one (1) year of the wrongful removal or retention, the return obligation is **absolute**:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial and administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned **shall order the return of the child forthwith**.

Hague Convention, art. 12 (emphasis added).

The return of the Child is not an adjudication of the underlying custody issues. It is simply returning the Child back to the status quo (in Colombia) before Respondent resorted to self-help in wrongfully retaining him.

    b.  <u>Exceptions to Mandatory Return</u>

A party who opposes the return of the child has the burden of establishing one or more of exceptions, two of which must be shown by a high burden of proof: clear and convincing evidence.

The first exception that requires clear and convincing evidence is found in Article 13(b) of the Convention. This exception requires that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention, art. 13 (b) (emphasis added). Petitioner has always had unfettered access to the Child prior to the abduction and there is no grave risk of return to Petitioner. Indeed, the opposite is true, the longer the Child remains away from the Petitioner the greater the risk of harm.

The second exception that requires clear and convincing evidence is found in Article 20 of the Convention. This exception requires that return may be refused "if this would not be permitted by the fundamental principles of the requested State relating to the protection of human

13

rights and fundamental freedoms." This exception does not apply.

The third exception, contained in Article 12 of the Convention, is inapplicable: if the proceedings were commenced *more than one year* after the wrongful retention *and* the child has become settled in his new environment, the return is not mandatory. However, in this case, whether the Child has become settled (he has not) is irrelevant because this action was initiated by Petitioner less than one (1) year after the wrongful removal. In that situation, " . . . the authority concerned shall order the return of the child forthwith." Convention, art. 12, clause 1.

The fourth exception, contained in Article 13 of the Convention, permits the court to decline return if the child has reached sufficient age and maturity that their opinions should be considered by the Court. Hague Convention, art. 13. There is a "'demonstrated disinclination' among courts to defer a child's objection as a basis to deny a petition." *Trudrung v. Trudrung*, 686 F. Supp. 2d 570, 578 (M.D.N.C. 2010). Additionally, Courts have routinely found that five-year-old children, a year older than the Child in this action, lack the sufficient age and maturity necessary to apply this exception. See *Matovski v. Matovski*, 2007 WL 2600862, at *15 (S.D.N.Y. August 31, 2007) (noting a five-year-old child does not "exhibit sufficient maturity to apply the Article 13 exception"); *see also Mendoza v. Silva*, 987 F. Supp. 2d 883, 905 (N.D. Iowa 2013) (holding a five-year-old is not of sufficient age and maturity for her objection to be taken into account).

The last exception is also inapplicable. Specifically, Article 13(a) of the Convention places the burden on Respondent to establish that Petitioner either consented and/or acquiesced to the removal or that he had not actually been exercising custody rights at the time of removal. Obviously, Petitioner, by giving travel authorization only until May 15, 2024, and by filing this litigation in this Court, refutes any claim that he consented to the present circumstances.

## VI.    PETITIONER IS ENTITLED TO EX PARTE INJUNCTIVE RELIEF

Under FRCP 65, the Federal Courts are empowered to grant temporary restraining orders and preliminary injunctions. *See* FED. R. CIV. P. 65.   Consistent with Federal Rule 65 and the exigent circumstances that typically exist in Hague Convention cases, Article 2 of the Hague Convention provides: "Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose, they shall use the most expeditious procedures available." October 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98. The "objects" of the Hague Convention are expressed in Article 1: the prompt return of an abducted child and the protection of the rights of custody. Federal Rule 65 allows this Court to expeditiously promote the Hague Convention's objectives by emergency equitable relief.

Rule 65(b) further provides that "[a] temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party 's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required." FED. R. CIV. P. 65.

ICARA § 9004(a) allows for this Court to take "measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition."

The decision to grant or deny an injunction is "within the sound discretion of the district court." *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002). "A preliminary injunction may be issued to protect the moving party from irreparable

injury and to preserve the power of the trial court to render a meaningful decision on the merits." *Compact Van Equip. Co., Inc. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir. 1978). The Court's task on an application for a preliminary injunction is to find: "(1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; a n d ( 4 ) a showing that the injunction, if it is issued, would not be adverse to the public interest." *Id.* As explained below, all of the elements for the emergency equitable relief requested herein, including injunctive relief, are satisfied in this case.

a. There is substantial likelihood that Petitioner will ultimately prevail on the merits.

As stated in greater detail above, according to the Hague Convention, the removal of a child is wrongful where the removal is in breach of established custody rights defined by the law of the country in which the child was habitually resident immediately before the removal or retention, and where, at the time of removal, these custodial rights were exercised (either jointly or alone) or would have been so exercised but for the removal. Art. 3, October 25, 1908, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98. By virtue of Colombian law, the country of the Child's habitual residence, Petitioner has custodial rights to the Child. Additionally, Petitioner exercised his custodial rights until the wrongful retention. Consequently, Petitioner is likely to prevail on the merits of his action for the return of the Child.

b. Petitioner will suffer irreparable injury unless equitable relief is granted.

Given that Respondent has now wrongfully retained the Child in the United States and frustrated Petitioner's rights, there is obviously a risk that Respondent will further hide the Child and herself when she learns about this new filing. This is more worrisome considering Petitioner's

lack of access to the Child for over a month and the significant lengths he has endured to simply locate the Child.

This is precisely the situation envisaged by the District Court in *Morgan v. Morgan*, where construing the Hague Convention and similar provisions under Iowa state law, the district court issued *ex parte* relief because it feared that "if a temporary restraining order is not issued *ex parte*, Mrs. [Respondent] and Mr. [Respondent's boyfriend] will likely flee this jurisdiction with the child upon receiving notice of Mr. [Petitioner's] intent to seek a temporary restraining order preventing them from doing so." 289 F. Supp.2d 1067, 1070 (N.D. Iowa 2003).

If Respondent flees with Petitioner's Child again, there may be even greater difficulty locating her as she will likely engage in even more aggressive and deceptive tactics. Such a state of affairs would qualify as irreparable injury to the Petitioner on any common-sense approach: the separation of a parent from the parent's child is an irreparable injury that can only be rectified by reunion with the child.

The real threat of irreparable injury clearly exists.  Petitioner would suffer irreparable injury if the requested relief is not granted. He continues to be separated from his child.  Under these circumstances, emergency equitable relief is authorized under the Hague Convention. ICARA directly speaks to such a remedy. 22 U.S.C. §9004(a) provides that a court may take appropriate measures "to protect the well-being of the child involved *or to prevent the child's further removal or concealment before the final disposition of the petition*." (Emphasis added).

c.  <u>The threatened injury to Petitioner outweighs any damage an injunction may cause Respondent.</u>

The potential of Petitioner once again losing the Child and/or the Child being abducted by Respondent far outweighs any perceived injury to Respondent. Petitioner asks the Court to restore the status quo: the return of the Child to Colombia and the ability to exercise his rights of

custody without risk of immediate further abduction.

The Respondent is in no position to complain. Having abducted the Child and, through her unilateral, unauthorized conduct, taken him to the United States and kept him from his father, she left Petitioner with no choice but to pursue these remedies.

d.  An injunction, if issued, would not be adverse to the public interest.

Petitioner seeks relief expressly authorized under the Hague Convention, an international treaty ratified as between Colombia, the United States, and other contracting states. The relief is further consistent with federal and state law implementing the Convention. There can be no public interest objection raised to the relief sought by Petitioner. The only relevant considerations are whether Petitioner satisfies the requirements of the Hague Convention and the requirements under the Federal Rules of Civil Procedure for the issuance of emergency equitable relief. Those requirements are both satisfied here.

## VII.    PETITIONER IS ENTITLED TO BE AWARDED COSTS AND LEGAL FEES

Article 26 of the Convention provides that:

> Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

ICARA 22 U.S.C. 9007(b)(3) provides that:

> Any court ordering the return of a child pursuant to an action brought under Section 4 shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner,

including court costs, legal fees . . . and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

As shown above, Respondent's conduct in violation of Petitioner's rights of custody has been flagrant and willful. Accordingly, it is appropriate that an order by this Court at the end of this action directing the return of the Child to Colombia be accompanied by an order directing Respondent to pay Petitioner's costs incurred in connection with this action, in an amount to be determined, upon a showing by Petitioner.

## VIII. CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Petitioner asks this Court to grant the following relief:

a.     Pursuant to Article 11 of the Hague Convention on the Civil Aspects of International Child Abduction, setting an expedited hearing on the Verified Petition and communicating that hearing date and time to Petitioner so that Petitioner may provide notice of these proceedings and the hearing to Respondent pursuant to 22 U.S.C. § 9003(c);

b.     Issue an order following the hearing, directing that L.C. (the "Child") shall be returned to Petitioner, pursuant to Articles 1(a) and 12 of the Hague Convention on the Civil Aspects of International Child Abduction and Section 4(b) of the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9003(b);

c.     Issue an immediate order prohibiting the removal of the Child from the jurisdiction of this Court, pending a hearing on the merits of the Verified Petition;

d.     Issue an immediate order that Respondent surrender any and all of her passports and all of the passports of the Child;

e.     Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the Child's wrongful retention pursuant to 22 U.S.C. § 9007(b)(3) and the Hague Convention, Article 26; and

f.     Any such further relief as justice and its cause may require.

Respectfully submitted,

Richard Min, Esq.
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue Suite 2821
New York, NY 10170
T: 212.681.6400
rmin@gkmrlaw.com

*ATTORNEY FOR PETITIONER*