UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEBASTIAN CORREA MORALES, <br><br> Petitioner, <br><br> vs. <br><br> JULIANA ESCOBAR RESTREPO, <br><br> Respondent. | Case No. 1:24-cv-07951 |

**PETITIONER'S VERIFIED REPLY TO RESPONDENT'S ANSWER FOR RETURN OF THE CHILD TO COLOMBIA**

Petitioner, Sebastian Correa Morales ("Petitioner" or "Mr. Correa"), by and through his undersigned counsel, respectfully submits this reply in further support of his Petition ("Petition") for the return of the subject child, L.C. (the "Child"), to Colombia pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention") and in response to Respondent Juliana Escobar Restrepo's ("Respondent" or "Ms. Escobar") Verified Answer, dated December 24, 2024 (the "Answer").

Respondent has, without Petitioner's consent, deliberately and wrongfully retained L.C. from his habitual residence of Colombia in the United States. The law is clear, and the Court should order Respondent to return the Child to Colombia forthwith so the custody of the Child can be decided by a Colombian court, pursuant to Colombian law.

I. **ARGUMENT**

A. **Colombia is L.C.'s Habitual Residence.**

1. Respondent has denied that "prior to May 16, 2024, Colombia was the Child's habitual residence." **ECF No. 14, Page 2, Paragraph 6.** "[A] child's habitual residence depends on the totality

1

of the circumstances specific to the case." *Monasky*, 140 S. Ct. at 723. In *Monasky*, the Supreme Court articulated several principles for determining habitual residence. "The place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence." *Id.* at 726. In its discussion of habitual residence, the *Monasky* Court explained that in general, a child "resides where she lives." *Monasky,* 140 S. Ct. at 726. "Because locating a child's home is a fact-driven inquiry, courts must be sensitive to the unique circumstances of the case and informed by common sense." *Id.* (citing *Redmond*, 724 F.3d at 744). The Supreme Court has instructed that:

> Common sense suggests that some cases will be straightforward: Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence. But suppose, for instance, that an infant lived in a country only because the caregiving parent had been coerced into remaining there. Those circumstances should figure in the calculus.

*Monasky*, 140 S. Ct. at 727 (citing *Karkkainen v. Kovalchuk*, 445 F.3d 280, 291 (3rd Cir. 2006)).

2. Ultimately, the question is, "[w]as the child at home in the particular country at issue?" *Id.* at 730. While Respondent denies Colombia is the Child's habitual residence, she admits that the parties and the Child resided in Colombia from December 2021 to January 2024. **ECF No. 14, Page 8, Paragraph 45.** Respondent admits that the Child attended Cascanueces and Semillas del Futuro in Colombia. *Id* **at Page 3, Paragraph 14.** She also admits that the Child participated in extracurricular activities such as horseback riding, BMX, and soccer lessons. *Id* **at Page 6, Paragraph 35.** Not only did the Child attend school and was enrolled in extracurricular activities in Colombia, but he also received medical and dental care in Colombia. The Child was surrounded by a tight knit community consisting of friends and family, and, despite the parties' separation, was able to see both parents on a weekly basis. Colombia was the Child's home.

3. At the time of the wrongful retention, L.C. was residing in New York with Respondent. He did not have any friends or family in New York. He was not yet enrolled in school, nor did he

2

participate in any extra-curricular activities. Several of the Child's personal belongings were kept in Colombia for his return. He was in the United States solely because Respondent could not find a job in Colombia, and she was selfishly seeking employment in the United States without taking in consideration Petitioner's role in the Child's life. Further, Petitioner only consented for the Child to remain in the United States until May 15, 2024; therefore, the Child's habitual residence never shifted from Colombia to the United States. Under the *Monasky* totality of the circumstances analysis, Colombia was still the Child's habitual residence at the time of wrongful retention in May 2024. *Monasky*, 140 S. Ct. at 726; *see also* Hague Convention, art. 3 (the wrongful removal inquiry concerns custody rights under "the law of the State in which the child was habitually resident immediately before the removal or retention").

**B.  Petitioner Did Not Consent or Acquiesce to the Permanent Retention of the Child in the United States.**

4. Respondent's Answer does not allege sufficient facts to substantiate an enumerated exception to the Hague Convention. The Article 13(a) consent and acquiescence exception must be established by a preponderance of the evidence. See 22 U.S.C. § 9003(e)(2)(B).

5. Respondent raises the Article 13(a) exception that Petitioner consented to or acquiesced to the retention of the Child in the United States as her only affirmative defense to the Petition.[1] Petitioner did not consent to or acquiesce to the Child's retention in the United States for an

---

[1] Respondent does not raise the Article 13(a) exception that Petitioner was not exercising his rights of custody in her affirmative defenses section even though she states at Paragraph 43, Page 8 of her Answer that she "makes no admissions as to the custody rights of Petitioner." ECF No. 14. To the extent Respondent seeks to raise that argument, it should fail. The Child lived with both parties in Colombia until their separation in August 2022, after which the Petitioner saw the Child weekly. While in the United States, the Petitioner visited the Child four times and speaks to him daily, despite the Respondent's clear efforts to limit the Petitioner's access to his son. See *Eidem v. Eidem*, 382 F. Supp. 3d 285, 291 (S.D.N.Y. 2019) (citing *Souratgar v. Fair*, 2012 WL 6700214, at *4 (S.D.N.Y. Dec. 26, 2012) ("a person cannot fail to exercise his custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child").

indefinite or permanent time. Petitioner simply agreed to allow the Respondent and the Child to reside in the United States for a specified and conditional period, as the Respondent was unhappy living in Colombia due to difficulty finding employment. The Petitioner explicitly limited his consent through a travel authorization form. **ECF No. 1-3**. The parties agreed to reconsider and reassess the Child's living situation upon their return to Colombia in the summer of 2024. In addition, it is worth noting that Petitioner consented to Respondent and the Child living in Florida from January 2024 to May 2024, yet he never consented to Respondent and the Child living in New York.

6. Respondent's surreptitious nature and failure to communicate her or the Child's address in New York once they moved to Queens also supports a conclusion that Petitioner did not consent to the Child residing in the United States. "The 'deliberatively secretive nature of [the] actions [of the removing parent] is extremely strong evidence that [the other parent] would not have consented to the removal.' *Simcox v. Simcox*, 511 F.3d 594, 603 (6th Cir. 2007)." *Velozny on behalf of R.V. v. Velozny*, 550 F. Supp. 3d 4, 17 (S.D.N.Y. 2021), aff'd, No. 21-1993-CV, 2021 WL 5567265 (2d Cir. Nov. 29, 2021).

7. Respondent alleges that the "parties agreed that Respondent and the Child were to move to the United States permanently in early 2024." **ECF No. 14, Page 3, Paragraph 15**. This is a complete misrepresentation of the parties' intentions. In fact, Petitioner never consented to his son residing permanently in the United States. Had that been the case, he would not have signed a travel authorization form valid only until May 15, 2024, and he would have granted the Respondent unlimited authorization. Furthermore, he would not have filed a Hague Application with the Colombian authorities or initiated the Petition in this instant case. *See Giampaolo v. Erneta*, 390 F.Supp.2d 1269, 1283 (N.D.Ga. 2004) (refusing to construe a travel authorization as consent because "[t]he very title of the consent letter 'Authorization to Travel'-indicated that the document was intended to authorize

4

travel, as opposed to permanent relocation"); *Moreno v. Martin*, 2 No. 08-22432-CIV, 2008 WL 4716958 (S.D. Fla., Oct. 23, 2008) (a travel authorization that did not include any return date did not establish consent).

8.  "The key to the consent inquiry is the petitioner's subjective intent, including the nature and scope of the alleged consent," particularly where "a parent consents to the removal of a child to a foreign location for a temporary visit, but not to a longer or even indefinite stay in that country." *In re Kim*, 404 F. Supp. 2d 495, 516 (S.D.N.Y. 2005); *see also Hazbun Escaf v. Rodriquez*, 200 F.Supp.2d 603, 612-13 (E.D. Va. 2002). Respondent must thus establish that Petitioner had the "subjective intent" to permit Respondent to retain the Child in the United States for an indefinite or permanent time period.

9.  The only evidence Respondent offers thus far in support of her consent defense consists of a few messages between the parties discussing L.C.'s schooling in the United States and Petitioner's visitation with the Child. It is undisputed that Petitioner consented to L.C. living in the United States for a limited period of time. Notwithstanding, Respondent's allegation that the consent was for a permanent move is categorically untrue. *See Hofmann v. Sender*, 716 F.3d 282, 294-95 (2d Cir. 2013) ("Article 13(a) does not provide that if a parent consents to removal of the child for a period, under certain conditions or circumstances, that retention of the child beyond those conditions or circumstances is necessarily permissible.") (quoting *Baxter*, 423 F.3d at 370) (internal quotation marks omitted).

10. Respondent alleges that "in numerous communications with Respondent including via text, Petitioner expressly consented to Respondent and the Child returning to the United States permanently and agreed that Petitioner would visit the Child in the United States as often as he pleased." **ECF No. 14, Page 11.** However, none of the exhibits provided by the Respondent demonstrate the Petitioner *expressly* consenting to the Child's permanent relocation to the United

5

States. **ECF No. 14-1.** It is worth noting that ambiguous language has not been found to rise to the level of affirmative consent. *See Schwaneberg v. Lopez*, No. 4:24-CV-00039, 2024 WL 5010144 (W.D. Va. Dec. 6, 2024) (citing *Onobun v. Ojiekhudu*, 2024 WL 4679401, at *6 (D. Md. Nov. 5, 2024) (finding Petitioner's statement of "Fine. You can have [the child]. You can have [the child]. You can take [the child] to America. You can do what you want to do" spoken in a moment of frustration to be "far different from consenting to the child's removal")).

11. Respondent has also failed to establish that Petitioner acquiesced to the Child remaining in New York, which requires a "higher degree of formality; either by a formal statement by petitioner or a consistent attitude of acquiescence over time." *Laguna v. Avila,* No. 07-CV-5136, 2008 WL 1986253, at *7 (E.D.N.Y. May 7, 2008). The mere act of filing a petition under the Hague Convention to return the child to his habitual place of residence undermines an assertion that the petitioner acquiesced. *See id.* Here, Petitioner made no "formal statement" that the Child may remain in the United States. Additionally, Petitioner has refused to pay for the Child's schooling and extracurricular activities in New York, as he clearly does not consent to the Child residing there. Respondent's claim that Petitioner consented to the Child residing in New York permanently because he acknowledged that Respondent was enrolling the Child in school does not meet the "higher degree of formality" required to show acquiescence by Petitioner. *Laguna,* 2008 WL 1986253, at*7.

12. Further, since May 2024, the Petitioner has consistently requested that the Respondent return L.C. to Colombia. *See In re Interest of Zarate*, No. 96 C 50394, 1996 WL 734613, at *3 (N.D. Ill. Dec. 23, 1996) ("[E]fforts by petitioner continued during the time the child was being retained in this country and eventually led to petitioner retaining legal counsel and filing suit under the Act. All of this conduct exhibits anything but a consent to, or acquiescence in, the retention of the child.").

6

13.     Lastly, and substantively, Petitioner successfully contested home state jurisdiction over the Child when Respondent filed for child custody in Queens County Family Court. At Paragraph 29 of her Answer, Respondent admits "that on September 30, 2024, the Queens County Family Court entered an Order dismissing without prejudice Respondent's petition for custody of the Child for lack of jurisdiction." **ECF No. 1-5; ECF No. 14, Page 5, Paragraph 29**. Respondent's affirmative defenses on the basis of consent or acquiescence therefore both fail.

### C.     Respondent is Not Entitled to Attorney Fees under the Hague Convention.

14.     Lastly, Respondent counterclaims Petitioner's request for attorney fees, which should also be rejected. An award of fees and costs serves two purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention," and (2) "to deter such [removal or retention.]" Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,511 (Mar. 26, 1986). The relevant provision provides, in pertinent part, as follows:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3).

15.     Therefore, while the Petitioner may seek attorney's fees due to the Respondent's wrongful actions, the Respondent is not entitled to such fees. "[A] prevailing petitioner in a return action is presumptively entitled to necessary costs, subject to the application of equitable principles by the district court," and "a losing respondent in a return action" has the burden of showing "why an award of 'necessary expenses' would be 'clearly inappropriate.'" *Ozaltin*, 708 F.3d at 375; *but see Ruth v. Marcoski,* 898 F.3d 1306, 1310 (11th Cir. 2018). "This caveat retains 'the equitable nature

7

of cost awards,' so that a prevailing petitioner's presumptive entitlement to an award of expenses is 'subject to the application of equitable principles by the district court.' " *Souratgar v. Fair,* 818 F.3d 72, 79 (2d Cir. 2016) (quoting *Ozaltin*, 708 F.3d at 375).

## II. CONCLUSION AND RELIEF SOUGHT

16. For all the foregoing reasons and those set forth in his initial moving papers, Petitioner respectfully requests that this Court:

1. Grant the Verified Petition;

2. Direct Respondent to cooperate with Petitioner in making arrangements for L.C.'s immediate return to Colombia;

3. Order Respondent to pay Petitioner for all costs and fees incurred to date by reason of L.C.'s wrongful retention pursuant to 22 U.S.C. § 9007; and

4. Any such further relief as the Court deems just and proper.

Date: January 6, 2025
New York, New York

Respectfully submitted,

/s/ Richard Min
Richard Min, Esq.
Michael Banuchis, Esq.
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Telephone: 212-681-6400
Facsimile: 212-681-6999
Email:rmin@gkmrlaw.com;
mbanuchis@gkmrlaw.com

*ATTORNEY FOR PETITIONER
SEBASTIAN CORREA MORALES*

8

## **VERIFICATION**

      I, Sebastian Correa, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America, that I am the Petitioner in the within action and have read the foregoing Reply and know the contents of the foregoing Reply are true, to the best of my knowledge, except as to those matters alleged upon information and belief.

Dated: January 6, 2025

                                                                                                      */s/ Sebastian Correa*
                                                                                                     Sebastian Correa Morales