UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| SEBASTIAN CORREA MORALES, | ) | Hon. Natasha C. Merle |
| *Petitioner,* | ) | |
| | ) | Civ. No. 24-7951 |
| -against- | ) | |
| | ) | |
| JULIANA ESCOBAR RESTREPO, | ) | |
| *Respondent.* | ) | |

**RESPONDENT'S PRETRIAL BRIEF**

## I.    Introduction

Petitioner seeks the return of the parties' child ("the Child") pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention") and the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.*. The Petition alleges that Respondent unlawfully retained the Child beginning on or about May 16, 2024, and that at the time of the unlawful retention, the Child's country of habitual residence was Colombia.

Respondent argues that Petitioner has failed to establish that the Child's country of habitual residence was Colombia at the time in question. The evidentiary hearing in this matter, scheduled for February 24 and 26, 2025, will turn on the question of whether the Petitioner has bet his burden to prove that Colombia was the Child's habitual residence at the relevant times. We will argue that the evidence supports a conclusion that the Child's country of habitual residence at all relevant times was the United States.

## II.    Legal Framework

Both the United States and Colombia are signatories to the Convention. See *Arboleda v. Arenas*, 311 F. Supp. 2d 336, 340 (E.D.N.Y. 2004). The Convention entered into force in the United States on July 1, 1988, for the purpose of "protect[ing] children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, Preamble; 53 Fed. Reg. 23843. On the date that Congress adopted the Convention, it also passed ICARA to implement the multilateral treaty. 42 U.S.C. § 11601 et seq.; 53 Fed. Reg. 23843. The Hague Convention is specifically designed to prevent the removal or retention of children by close family members.

"To deter family members from removing children to jurisdictions more favorable to their custody claims in order to obtain a right of custody from the authorities of the country to which the child has been taken, the Hague Convention attempts to deprive [their] actions of any practical or juridical consequences." *Gitter v. Gitter*, 396 F.3d 124, 129-30 (2d Cir. 2005) (internal quotations omitted). The Hague Convention adopts the principle that the child's country of "habitual residence" is "best placed to decide upon questions of custody and access." *Croll v. Croll*, 229 F.3d 133, 137 (2d Cir. 2000) (internal quotations omitted).

In order to prevail on a claim under the Convention for the return of a child, a petitioner must first establish by a preponderance of the evidence that the child was wrongfully removed or retained within the meaning of the Convention. 42 U.S.C. § 11603(e)(1)(A).

The Second Circuit has noted that Article 1 of the Convention states that a retention or abduction is "wrongful" when such action is in violation of custody rights granted by the country "in which the child was habitually resident immediately before the removal or retention." *Arboleda v. Arenas*, 311 F. Supp. 2d 336, 341 (E.D.N.Y. 2004), citing *Croll v. Croll*, 229 F.3d at 137. A determination of habitual residence under Article 3 of the Hague Convention is a mixed question of law and fact. See e.g. *Guzzo v. Cristofano*, 719 F.3d 100, 109 (2d Cir. 2013).

The Convention does not itself provide any definition of "habitually resident." However, the Second Circuit has held that analysis of a child's habitual residence begins with consideration of the relevant intentions, normally "the intent of the child's parents or others who may fix the child's residence." *Gitter v. Gitter*, 396 F.3d 131-32. Where the parents disagree as to the place they intended to be the child's habitual residence, it is the court's task to determine the intentions of the parents as of the last time that their intentions were shared. *Id.* at 133. "In making this determination the court should look, as always in determining intent, at actions as well as declarations." *Id.* at 134.

While the shared intent of the parents normally controls the habitual residence of the child, courts must also inquire whether the available evidence "unequivocally points to the conclusion that the child has acclimatized to [a] new location and thus has acquired a new habitual residence" notwithstanding the parents' intentions. *Id.*

III.    **Analysis**

Petitioner must first show that the Child was "habitually resident" in Colombia at the time Petitioner alleges Respondent retained him. The evidence shows that the parties intended

for the Child to reside in the United States. Accordingly, the Child's habitual residence is the United States. Whatever disagreements existed between them with respect to the Child's living arrangements in the United States, whether the Child was to live in Florida or New York, and whether and how often the Child would visit Colombia, the parties unambiguously understood and agreed that the Child was moving to the United States permanently.

Petitioner understood that Respondent's purpose in coming to the United States in January 2024 was for Respondent to find employment in the United States as a physician's assistant. Petitioner further understood and accepted that Respondent would continue to be the Child's custodial parent. Petitioner acquiesced to Respondent bringing the Child with her to the United States by executing a written authorization for the Child to travel to the U.S. with Respondent in January. Petitioner's claim that he only authorized the Child to travel to the U.S. temporarily, for "tourism," is belied by his numerous communications with Respondent, before and after her January departure, concerning Respondent's job prospects in Florida and New York, and arrangements for housing, day care and schooling, and medical insurance in the U.S. Petitioner contradicts himself in his pleadings in this matter, alleging at once that Respondent and the Child was "temporarily moving" to the United States and also that his intentions for the Child were that he visit the U.S. as a tourist.

The evidence shows that Petitioner has invoked the Convention in bad faith, for the objective of removing the Child to Colombia and thus to exert control over Respondent, who has been, is, and, Petitioner concedes, *should be* the custodial parent.

If the Court finds that Petitioner has failed to meet his burden to show that the Child's country of habitual residence was Colombia a the relevant times, the Court need not consider

whether, notwithstanding his parents' intentions, there is evidence "unequivocally point[ing] to the conclusion" that the the Child has acclimatized to his new residence in the United States.

Nonetheless, the evidence in the record shows that the Child has acclimatized to his new residence in the United States. He is enrolled in preschool and is thriving there. He is seen by a pediatrician in New York State. He is surrounded by family and friends in New York, New Jersey, and Florida and engages in play and social activity as befits a child his age.

Because Petitioner has failed to establish that the Child was removed from his habitual residence or retained in another state, Petitioner has likewise failed to establish wrongful removal or retention of the Child within the meaning of the Hague Convention.

The scope of a court's inquiry under the Hague Convention is limited to the merits of the abduction claim. ICARA specifically provides that the Convention and its implementation "empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 42 U.S.C. § 11601(b)(4); and see, e.g., *Arboleda v. Arenas*, 311 F. Supp. 2d 336, 340 (E.D.N.Y. 2004).

Accordingly, the Court should deny the Petition in its entirety.

Respectfully submitted,

Dated: New York, New York
      January 31, 2025

/s/ Edgar Loy Fankbonner
Edgar Loy Fankbonner
Goldberger & Dubin, PC
401 Broadway, Suite 306
New York, New York 10013
Tel. (212) 431-9380
fankbonner@gmail.com

CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing submission to be served upon the following parties by uploading a true and correct copy thereof to the Court's ECF portal:

Camilla Redmond, Esq.,
Richard Min, Esq., and
Michael Banuchis, Esq.
Costal Green Kaminer Min & Rockmore LLP
420 Lexington Ave. Ste. 2821
New York, NY 10170

Dated: New York, New York
   January 31, 2025

               /s/ Edgar Loy Fankbonner
               Edgar Loy Fankbonner
               Goldberger & Dubin, PC
               401 Broadway, Suite 306
               New York, New York 10013
               Tel.: (917) 796-7406
               fankbonner@gmail.com
               *Attorneys for Respondent*