UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
SEBASTIAN CORREA MORALES,        )
                                  )
                                  )
             Petitioner,          )
                                  )     Case No. 1:24-cv-07951
     - against -                  )
                                  )
JULIANA ESCOBAR RESTREPO,         )
                                  )
                                  )
                                  )
             Respondent.          )
_____)

## JOINT POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Richard Min
Michael Banuchis
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Telephone: 212-681-6400
Facsimile: 212-681-6999
Email: rmin@gkmrlaw.com
Email: mbanuchis@gkmrlaw.com

*Attorneys for Petitioner*
Sebastian Correa Morales

Edgar L. Fankbonner
Goldberger & Dubin, PC
401 Broadway, Suite 306
New York, New York 10013
Telephone: 212-431-9380
Facsimile: 212-966-0588
Email:fankbonner@gmail.com

*Attorney for Respondent*
Juliana Escobar Restrepo

## I. PROCEDURAL HISTORY

1. This case concerns L.C. (the "Child"), the five-year-old child of Petitioner Sebastian Correa Morales ("Petitioner" or "Mr. Correa") and Respondent Juliana Escobar Restrepo ("Respondent" or "Ms. Escobar").

2. On November 15, 2024, Petitioner filed his Verified Petition pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act ("ICARA") seeking the return of the Child to Colombia and alleging that the Child was wrongfully retained from Colombia to the Eastern District of New York. ECF No. 1.

3. This Court held a two-day bench trial on February 24 and 26, 2024 and heard live testimony from the parties and one witness, and remote testimony from four witnesses[1]. ECF No. 53. The Court also received into evidence several documentary exhibits from both parties. *Id.*

## II. UNDISPUTED FINDINGS OF FACT

4. Petitioner Sebastian Correa is the father of L.C. Exhibit P2.

5. Respondent Juliana Escobar Restrepo is the mother of L.C. *Id.*

6. The parties are dual citizens of Colombia and the United States. Exhibit P1 and P2; *See also* 02/24/25 Tr. 119: 4-9 and 02/26/25 Tr. 225: 2.

7. Both parties were born in Medellin, Colombia. 02/24/25 Tr. 66:5; 02/26/25 Tr. 195:14.

---

[1] The Court heard testimony from Sebastian Correa Morales (Petitioner), Juliana Escobar Restrepo (Respondent), Elizabeth Gomez Gonzales (Petitioner's witness), Jenny Gallego Cano (Petitioner's witness), Jorge Cadena Solano (Respondent's witness), Ana Escobar del Carmen Restrepo (Respondent's witness), and Juan Ocampo (Respondent's witness).

8. The Child is a dual citizen of Colombia and the United States. Exhibit P2.

9. Petitioner and Respondent met in October 2014 in Colombia and became romantically involved shortly thereafter. 02/24/25 Tr. 66:10-13; 02/26/25 Tr. 196:10.

10. Respondent returned to New York in January 2015, and Petitioner relocated to New York to live with her in July 2015. 02/24/25 Tr. 67: 6-7; 02/26/25 Tr. 196:18-25.

11. Petitioner and Respondent married on September 15, 2015, in Long Island, New York. 02/24/25 Tr. 66:19-23; 02/26/25 Tr. 197:1-2.

12. At the end of summer 2019, Petitioner and Respondent moved to Miramar, Florida. 02/24/25 Tr. 69:6-7; 02/26/25 Tr. 198:15-16.

13. In January 2020, the Child was born in Miami, Florida. Exhibit P2.

14. In December 2021, the parties and the Child moved to Medellin, Colombia. 02/24/25 Tr. 69:18-25; 02/26/25 Tr. 202:18-19.

15. Petitioner and Respondent sold their sofa and dining table and brought the rest of their belongings to Colombia. 02/24/25 Tr. 71:17-22. The parties did not keep any belongings in the United States when they relocated to Colombia with the Child. *Id* at 23-25.

16. Respondent was employed until approximately April 2022. 02/24/25 Tr. 159:8-10; 02/26/25 Tr. 205:24-25; 206:1-2.

17. In August 2022, the parties separated. 02/24/25 Tr. 74:25; 75:1.

18. The parties are still married. 02/26/25 Tr. 195: 2-4.

19. In November 2022, Petitioner moved in with his mother and Respondent moved in with her mother. 02/24/25 Tr. 75:2-6. *See also* 02/26/25 Tr. 212: 1-3.

3

20. Petitioner and Respondent resided five minutes away from each other in Colombia after separating. *Id.*

21. In May 2023, the parties were referred to Elizabeth Gomez by Dr. Jorge Cadena, their previous marriage counselor, to assist them in co-parenting and raising the child.. 02/24/25 Tr. 8:2-6.

22. In August 2023, the Child was baptized in Colombia. 02/24/25 Tr. 87:8-10.

23. The Child received medical care in Colombia (02/24/25 Tr. 79:15-17) and was last seen by his pediatrician in Colombia on January 24, 2024. Exhibit 8. *See also* 02/24/25 Tr. 80:9-12.

24. The Child's Colombian health insurance was renewed, and he is now covered until November 13, 2025. Exhibit 21. *See also* 02/24/25 Tr. 74:3-7.

25. The Child participated in activities in Colombia, such as horseback riding lessons, swimming lessons, bike riding lessons, and soccer. Exhibit 4; 02/24/25 Tr. 79: 9-11. *See also* 02/24/25 Tr. 82: 1-3.

26. The Child attended Cascanueces Day Care in El Carmen, Colombia, from March 2022 through August 2022. 02/24/25 Tr. 80: 16-23.

27. Thereafter, the Child attended Semillas del Futuro Pre-School in Itaqui, Colombia, from January 2023 until November 2023. 02/24/25 Tr. 81: 5-10; 02/26/25 Tr. 223.

28. The Child had play dates with his friends in Colombia. They would play with cars, play soccer, and go to the playground. 02/24/25 Tr. 88:25; Tr. 89:1-7.

29. Respondent owns three properties in Colombia and none in the United States. 02/26/25 Tr. 268.

30. As of January 2024, the Child only spoke Spanish. 02/24/25 Tr. 89: 18-20.

31. On January 6, 2024, Petitioner registered the Child as a Colombian citizen. 02/24/25 Tr. 130:8.

32. On January 12, 2024, the Child's Colombian passport was issued. Exhibit P3.

33. On January 26, 2024, Respondent left Colombia with the Child and traveled to Orlando, Florida, with the Child. 02/26/25 Tr. 227:1-3.

34. Respondent and the Child moved in with Respondent's cousin and her husband in Kissimmee, Florida. 02/26/25 Tr. 227. Exhibit R-B1, B2, B3, B4, B5, B6.

35. In February 2024, Respondent texted Petitioner and asked him to continue coverage of her and L.C. under his health insurance plan in Colombia. 02/26/25 Tr. 268:22-25.

36. Petitioner visited the Child in Florida in March and April 2024. 02/26/25 Tr. 238:15.

37. On April 28, 2024, Petitioner purchased tickets for Respondent and the Child to fly from Orlando, Florida, to Medellin, Colombia. Exhibit P9. *See also* 02/26/25 Tr. 285: 22-23.

38. Respondent and the Child resided in Florida, until May 4, 2024, when Respondent relocated to New York with the Child. 02/26/25 Tr. 255:8-9; 278:14-15.

39. On May 6, 2024, Petitioner sent Respondent a text message stating, "You're making unilateral decisions that you wouldn't like me to make". 02/26/25 Tr. 279.

40. Respondent and the Child first moved in with Respondent's stepfather in Fresh Meadows, New York. 02/26/25 Tr. 281:5-7. *See also* 02/26/25 Tr. 330:8-9.

41. Thereafter, in June 2024, Respondent and the Child moved to a new address in Queens. 02/26/25 Tr. 292:12-16. *See also* 02/24/25 Tr. 109:1-9.

42. Respondent refused to disclose her new address to Petitioner because she feared that Petitioner would pick up L.C. and take him to Colombia without her permission. 02/24/25 Tr. 109; 110:1-5. See also 02/26/25 Tr. 293.

43. In the month of May 2, the Child did not attend daycare or school, nor was he enrolled in extracurricular activities. 02/26/25 Tr. 281:13-18.

44. In May 2024, Respondent told Jenny Gallego, a mutual friend of Petitioner and Respondent, that L.C. would be attending Ms. Gallego's son's birthday party in Colombia. 02/26/25 Tr. 182:20-25; 183:1-12.

45. On May 12, 2024, Respondent told Ms. Gallego that L.C. was not going to travel to Colombia. 02/26/25 Tr. 183:2-9.

46. On May 14, 2024, Respondent messaged Petitioner that L.C. was not going to travel to Colombia. 02/24/25 Tr. 104; 5-7.

47. Respondent and the Child did not return to Colombia on May 16, 2024. 02/24/25 Tr. 103: 21-22.

48. Respondent feared that if the Child traveled to Colombia, Petitioner would refuse to provide a written authorization for the Child to return to the United States. 02/24/25 Tr. 104: 12-14. *See also* 02/26/25 Tr. 248:20-24.

49. On November 15, 2024, Petitioner filed his Verified Petition for The Return of Child to Colombia alleging that the Child was wrongfully retained from Colombia to the Eastern District of New York. ECF No. 1.

50. On December 24, 2024, Respondent filed her Answer, in which she challenged Petitioner's *prima facie* case and raised the affirmative defense of consent under the Hague Convention. ECF No. 14.

51. On February 24 and 26, 2024, this Court conducted a bench trial, during which the parties were afforded the opportunity to be heard, examine and cross-examine witnesses, present evidence bearing on the issues, and argue the law and evidence.

### III. UNDISPUTED CONCLUSIONS OF LAW

**A. The Hague Convention Framework**

64. Petitioner's Verified Petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[2] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (hereinafter "ICARA") 22 U.S.C. § 9001 et seq.

65. The Convention came into effect in the United States on July 1, 1988, and was ratified between the United States and Colombia on June 1, 1996.

66. The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully removed in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Hague Convention, Art. 1.

67. The Hague Convention applies to cases in which one parent wrongfully removes or retains her or his child, who is under the age of 16 years, from the child's "habitual

---

[2] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).

residence" in breach of the other parent's custodial rights, which were being exercised at the time of the wrongful retention of the child. Hague Convention, Art. 3.

68. The Hague Convention is implemented in the United States by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 et seq.

69. ICARA "empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." *Id.* § 9001(b)(4); *see* Convention, Art. 19, ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue"). *Id.*

**B. Jurisdiction**

70. The United States District Court for the Eastern District of New York has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

**C. Petitioner's *Prima Facie* Case**

71. Under ICARA, the party petitioning for the child's return bears the burden of establishing by a preponderance of the evidence that the child was wrongfully removed or retained. 22 U.S.C. § 9003(e)(1).

72. To establish his prima facie case, petitioner must demonstrate, by a preponderance of the evidence, that:

(1) the child was habitually resident in one State and has been removed to or retained in a different State;
(2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and
(3) the petitioner was exercising those rights at the time of the removal or retention.

*Marks v. Hochhauser*, 876 F.3d 416, 418-19 (2d Cir. 2017) (citations omitted).

73. Respondent challenges the first prong of Petitioner's *prima facie* case, which is whether Colombia was L.C.'s habitual residence as of May 16, 2024. ECF No. 14; See also 02/26/25 Tr. Page 370:18-24; Page 371:1-4.

74. Respondent does not contest that Petitioner was exercising his custodial rights at the time of the alleged wrongful retention in May of 2024. *See* Hague Convention Art. 3(b); 02/26/25 Tr. 371:1-4.

**D. Respondent's Affirmative Defense**

75. The Respondent has asserted that the Child ought not to be returned because Petitioner consented to the Child moving to the United States with Respondent and living with Respondent thereafter. ECF No. 14.

76. Article 13 of the Convention provides that "the judicial or administrative authority of the requested State is not bound to order the return of the child if ... the person ... having care of the person of the child ... consented to or subsequently acquiesced in the removal or retention." Hague Convention, art. 13(a); 22 U.S.C. § 9003(e)(2)(B).

77. "A respondent raising the consent or acquiescence exception must show by a preponderance of the evidence that the petitioner consented to or subsequently acquiesced in the removal or retention." *Id.*

Dated: New York, New York
       March 5, 2025

| | |
|---|---|
| By: /s/ Richard Min | By: /s/ Edgar Loy Fankbonner |
| Richard Min | Edgar L. Fankbonner |
| Green Kaminer Min & Rockmore LLP | Goldberger & Dubin, PC |
| 420 Lexington Avenue, Suite 2821 | 401 Broadway, Ste. 306 |
| New York, New York 10170 | New York, New York 10013 |
| Telephone: 212-681-6400 | Telephone: 212-431-9380 |
| Facsimile: 212-681-6999 | Facsimile: 212-966-0588 |
| Email: rmin@gkmrlaw.com | Email: fankbonner@gmail.com |
| | |
| *Attorney for Petitioner* | *Attorney for Respondent* |
| Sebastian Correa Morales | Juliana Escobar Restrepo |