# GREEN KAMINER MIN & ROCKMORE LLP

**Manhattan**
420 Lexington Ave., Ste 2821
New York, New York 10170
T. 212.681.6400

**Long Island**
600 Old Country Rd., Ste. 410
Garden City, New York 11530
T. 516.858.2115

April 7, 2025

**VIA ECF**

Honorable Natasha C. Merle
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
Email: Merle_Chambers@nyed.uscourts.gov

      *Re*:    *Correa Morales v. Escobar Restrepo*
            Case No. 1:24-cv-07951-NCM-TAM

Dear Judge Merle:

Petitioner respectfully submits this letter in strong opposition to Respondent's motion to stay enforcement of this Court's March 28, 2025 Order (ECF No. 64). Petitioner opposes any stay – whether pending the resolution of Respondent's anticipated appeal or an interim administrative stay to allow Respondent time to seek relief from the Second Circuit. This Court has already conducted a comprehensive analysis and expressly concluded that the Child's retention was wrongful under the Hague Convention. Respondent's eleventh-hour request for a stay is inconsistent with the Court's well-reasoned decision and threatens to inflict continued and unnecessary harm on the Child.

    I.      <u>Respondent's Motion for a Stay Should be Denied</u>

A stay pending appeal is an "extraordinary" remedy. *Merrill v. Milligan*, 142 S. Ct. 879, 883 n.1 (2022). A party seeking a stay bears a heavy burden to "establish[ ] a favorable balance of [the relevant] factors." *Barcia v. Sitkin*, No. 79 Civ. 5831, 2004 WL 691390, at *1 (S.D.N.Y. March 31, 2004); *see Shays v. Federal Election Commission*, 340 F.Supp.2d 39, 41 (D.D.C.2004) (noting that the "standards required to justify the extraordinary remedy of a stay pending appeal" are "stringent").

The Convention is clear that these abduction cases be handled as expeditiously as possible and requires the "prompt" return of the child. *See* Convention, preamble. Article 2 of the Convention directs the signatory countries to "use the most expeditious procedures available" and Article 11 implies the adjudicative process be completed within six weeks of its initiation.

In *Chafin v. Chafin*, 133 S. Ct. 1017, 1027 (2013), the Supreme Court determined that the return of a child does not moot an appeal and noted that routine stays would be contrary to the Convention's goal of promptly deciding cases and would incentivize people to file baseless appeals for the purpose of delaying a child's return to his country of habitual residence. *Id.* In Convention

cases, "[s]taying the return of a child . . . should hardly be a matter of course." *Friedrich v. Friedrich*, 78 F.3d 1060, 1063 (6th Cir. 1996).

In recognizing that delay in returning a child is detrimental to the Convention's goals, circuit courts have regularly denied staying return orders. *See, e.g., Friedrich*, 78 F.3d at 1070 (". . . the district court's stay of that order pending appeal is VACATED. . . [b]ecause T.'s return to Germany is already long-overdue. . ."); *March v. Levine,* 249 F.3d 462,475 (6th Cir. 2001) (stay vacated "[b]ecause [S.] and [T.] have been separated from their father for almost one year now". . . ); *see also Velozny on behalf of R.V. v. Velozny*, 2021 WL 5567265, at *1 (2d Cir. 2021); *Smedley v. Smedley*, 772 F.3d 184, 188 (4th Cir. 2014); *Redmond v. Redmond*, 724 F.3d 729, 735 (7th Cir. 2013); *Whiting v. Krassner*, 391 F.3d 540, 543 (3d Cir. 2004); *Taglieri v. Monasky*, 907 F.3d 404, 407 (6th Cir. 2018), aff'd, 140 S. Ct. 719 (2020); *Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014).

In Convention cases, courts apply the following four traditional stay factors in considering whether to stay a return order: (1) whether the stay applicant has made a strong showing that he/she is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Chafin*, 133 S. Ct. at 1027.

Although presented as four factors for consideration, "[t]he first two factors . . . are the most critical"; the last two are reached only "[o]nce an applicant satisfies the first two factors." *Nken v. Holder*, 556 U.S. 418, 434-435 (2009). Here, Ms. Escobar Restrepo's motion to stay does not satisfy any of the four factors and should be denied.

II.    <u>Ms. Escobar Restrepo Cannot Establish Likelihood of Success</u>

To make a "a strong showing of a likelihood of success on the merits," Ms. Escobar Restrepo must show "more than a mere possibility that relief will be granted." *Nken*, 129 S. Ct. at 1753. A district court has "abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence," *Cooter & Gell v. Hartmarx Corp*., 110 S.Ct. 2447 (1990), or rendered a decision that "cannot be located within the range of permissible decisions," *Zervos v. Verizon N.Y., Inc*., 252 F.3d 163, 169 (2d Cir. 2001).

Ms. Escobar Restrepo is unlikely to succeed on the merits of her appeal. At this time, her stated basis for warranting a stay is that Petitioner's testimony and his witness Elizabeth Gomez's testimony was not credible. The standard of review for credibility determinations is extremely deferential: "Following a bench trial, we set aside findings of fact only when they are clearly erroneous, and we give due regard to the trial court's credibility determinations." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 300 (2d Cir. 2006).

She claims that, therefore, there is insufficient evidence in the record to establish that "Mr. Correa had set two conditions for the child's removal to the United States: (1) the child was to live in Florida, not New York; and (2) the child was to travel to Colombia in May." ECF No. 64 at 2.

"After a bench trial, this Court reviews a district court's factual findings for clear error and its legal conclusions de novo." *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009). "The 'clearly erroneous' standard applies whether the findings are based on witness testimony, or on documentary evidence, or on inferences from other facts." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). In determining whether the district court's factual findings are clearly erroneous, we must "give due regard to the trial court's opportunity to judge the witnesses' credibility. *Id.* (quoting Fed. R. Civ. P. 52(a)(6)). "It is within the province of the district court as the trier of fact to decide whose testimony should be credited," and the district court is "entitled, just as a jury would be, to believe some parts and disbelieve other parts of the testimony of any given witness." *Id.* (citations omitted). We may not "second-guess the court's credibility assessments." *Id.*

The Court expressly credited Petitioner's testimony that "he did not agree that L.C. would move to the United States permanently at that time." (ECF No. 62 at 23). It also found "the majority of Gomez's testimony credible," while appropriately declining to rely on her account of Respondent's statements made during therapy sessions out of respect for Respondent's psychotherapist privilege, "to the extent it was implicated." (ECF No. 62 at n.4). In sharp contrast, the Court rejected Respondent's testimony as not credible, including her claim that "the parties had no 'actual agreement' and petitioner placed no conditions on L.C.'s move." (ECF No. 62 at 22). These determinations rest squarely within the Court's discretion as the fact-finder, and the Second Circuit has repeatedly held that it will not "second-guess the court's credibility assessments." *Greystone Bus. Credit II LLC*, 631 F.3d at 52.

Respondent's remaining attacks on Ms. Gomez's testimony are unfounded and mischaracterize the record. Respondent asserts that Ms. Gomez made "unsolicited" statements favorable to Petitioner and implies bias on the basis that Petitioner compensated her for her time. (ECF No. 64 at 2). But Ms. Gomez carefully reviewed the parties' clinical history prior to testifying. The fact that she was compensated for her time testifying should not be held against her credibility because: "a witness may be compensated for the time spent preparing to testify or otherwise consulting on a litigation matter in addition to the time spent providing testimony in a deposition or at trial." *Klorczyk v. Sears, Roebuck & Co.*, No. 3:13-CV-00257 (JAM), 2017 WL 3272237 (D. Conn. Aug. 1, 2017) (citing *Prasad v. MML Inv'rs Servs., Inc.*, 2004 WL 1151735, at *5 (S.D.N.Y. 2004)).

III.     Ms. Escobar Restrepo Cannot Show Irreparable Harm to Herself or The Child

To satisfy the second factor, Ms. Escobar Restrepo must make a "threshold showing" of irreparable harm in the absence of a stay. *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). To meet this threshold, Ms. Escobar Restrepo must demonstrate more than merely "some possibility of irreparable injury." *Nken*, 556 U.S. at 420. She has the burden of showing that, absent a stay, she would suffer irreparable injury – i.e., "certain and imminent harm." *U.S. S.E.C. v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014) (citation omitted).

Ms. Escobar Restrepo's argument that L.C. will be harmed absent a stay is pure speculation and asks the Court to avoid an outcome that may very well never come to fruition. Any disruption L.C. may experience was directly caused by Respondent's actions. She could have, but did not, abide by her agreement with Petitioner and return the Child to Colombia in May. Because she did not do

so, she wrongfully kept L.C. from his home and family in Colombia. Parents commonly bring up these types of concerns in Hague cases in different contexts. "The fact that a child has grown accustomed to her new home is never a valid concern … as it is the abduction that causes the pangs of subsequent return." *Cuellar v. Joyce*, 596 F.3d 505, 511 (9th Cir. 2010) (internal quotation marks and emphasis omitted). Further, the Convention generally is not a "license for a court in the abducted-to country to speculate on where the child would be happiest," *Id*. at 509.

The academic year in Colombia ranges from January to November. Petitioner has secured a spot for L.C. at the "Anglo Español" School in Colombia. L.C. can commence his studies there on April 21, 2025 (once the spring break is over) without further academic disruption. Annexed hereto as **Exhibit A** is a letter from L.C.'s school in Colombia[1]. Petitioner has already arranged, and remains ready to facilitate, the transition so that any impact on L.C.'s school life would be minimal upon his return. It will be irreparably harmful for L.C. to miss substantial time and will hinder his transition back to Colombia.

Respondent's claim that L.C. will be harmed if returned is speculative and meritless. There is a support system ready to integrate a smooth transition and there is no harm, much less irreparable harm, that will result from returning L.C. to the home he has known for his entire life prior to the wrongful retention.

IV.    Substantial Injury

With respect to the third factor, Respondent Escobar Restrepo contends that Petitioner Correa will not suffer substantial injury from a stay, suggesting he is free to visit L.C. in the United States. This assertion is disingenuous. In practice, Petitioner's communication and contact with his son have been sporadic, tightly monitored, and entirely subject to Respondent's unilateral control. She dictates the timing and manner of contact, answering calls and replying to messages at her discretion, at times leaving Petitioner with no information about his child for up to ten days. Leading up to the trial, despite Petitioner's physical presence in New York, Respondent refused to permit weekday overnights with L.C., limiting Petitioner's time with his son to only three days. She further denied Petitioner the opportunity to pick L.C. up from school, instead requiring that he wait until she returned home from work to collect the child from her residence.

Even Petitioner's limited virtual contact has been hampered. Facetime calls are often brief, strained, or otherwise complicated by Respondent's interference. On December 17, 2024, at 8:35 PM, Petitioner emailed Respondent: "Im not the one blocking my access to [L.C.]. Pick [an app] that you are not gonna complain and ill use it. Want to see my son. There is no justification for this." The email thread is attached hereto as **Exhibit B** at 3. Most troubling, Respondent has violated this Court's Order (ECF No. 26) by failing to comply with the mandated daily visitation period between 7:00 p.m. and 8:00 p.m., ignoring Petitioner's calls during that court-ordered window. A screenshot of the parties' WhatsApp correspondence, reflecting Respondent's failure to answer calls, is annexed hereto as **Exhibit C**. Petitioner's counsel had to email Respondent's counsel in December 2024 as Respondent had refused to allow Petitioner to visit L.C. in New York in November. In March 2025,

---

[1]    The school letter, originally written in Spanish, was translated using Google due to time constraints. The Petitioner can provide a certified translation if needed.

Petitioner's counsel reminded Respondent's counsel that she was disregarding the parties' agreement. These communications are annexed as **Exhibit D**.

In *Nicolson v. Pappalardo*, 685 F.Supp.2d 142, 145-46 (D. Maine 2010), the court found that the mother "fail[ed] to recognize that if the court grants a stay, [the father] will continue to suffer from the very harm that led to this lawsuit—the absence of [the child] from [the father's] life." The district court in *Nicolson* found that the mother's actions "ha[d] already deprived [the father] of nearly a year with his daughter[,]" such that "[e]very additional day that [the child] is wrongfully retained in the United States causes harm to the [father]." *Id*.

The U.S. Congress, in enacting the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §9001 et seq., found that "international abduction or wrongful retention of child is harmful to their well-being." The Supreme Court wrote in *Abbott v. Abbott*, 560 U.S. 1, 21 (2010) that "[a]n abduction can have devastating consequences for a child. 'Some child psychologists believe that the trauma children suffer from these abductions is one of the worst forms of child abuse.'" The need for an expedited return is paramount, and the harm that Ms. Escobar Restrepo caused can only be remedied by an immediate repatriation of L.C. back to Colombia. 437 days have passed since L.C. has been in Colombia and has seen his extended family in Colombia, and approximately 41 days since L.C. saw his father. Everyone is in Colombia waiting for his return.

V.     Public Interest

The public interest also weighs against a stay. In *Chafin*, 568 U.S. at 165, the Supreme Court cautioned that issuing routine stays would conflict with the Convention's exhortation for prompt disposition and could increase the number of appeals.

Having wrongfully retained L.C. from his home, Ms. Escobar Restrepo's suggestion that disruption to his stability and routine should be a Court priority is disingenuous. Again relevant is the concept that "[a] removing parent must not be allowed to abduct a child and then—when brought to court—complain that the child has grown used to the surroundings to which they were abducted. Under the logic of the Convention, it is the abduction that causes the pangs of subsequent return." *Lukic v. Elezovic*, 20-CV-3110, 2021 WL 804384, at *3 (E.D.N.Y. Mar. 3, 2021).

"[T]he public interest, as relevant to a Hague Convention dispute, is primarily defined by the treaty itself, the express purpose of which is 'to secure the prompt return of children wrongfully removed to or retained in any Contracting State.'" *Hofmann v. Sender*, 2012 WL 8466673, at *1 (S.D.N.Y. Dec. 20, 2012) (quoting Hague Convention art. 1); *See also Vale v. Avila,* No. 06-1246, 2008 WL 2246929 at *3 (C.D. Ill. May 29, 2008) ("[T]he public interest of this country and of other countries which are signator[ie]s to the Convention is met when the purpose of the Convention is met."). "Protraction ... is hardly consonant with the Convention's objectives." *Chafin*, 568 U.S. at 185 (Ginsburg, J., concurring). Granting a stay would only serve to further protract this case and would undermine the goals of the Convention.

Lastly, denying a stay at this juncture does not prevent Respondent from filing an appeal with the Second Circuit. Nor does it prevent Respondent from seeking a stay there. It does, however, allow L.C. to return to his country of habitual residence "as expeditiously as possible,"

"minimiz[ing] the extent to which uncertainty adds to the challenges confronting both parents and child" during this difficult legal proceeding. *Chafin*, 568 U.S. at 179-180. Therefore, the fourth factor also weighs in favor of denial.

      For the foregoing reasons, it is respectfully requested that this Court deny Ms. Escobar Restrepo's motion for a stay to allow Ms. Escobar Restrepo to retain appellate counsel and pursue relief in the Second Circuit.

                    Respectfully,

                    /s/ Richard Min
                    Richard Min
                    *Attorney for Petitioner*

cc:     All Counsel (by ECF)

# EXHIBIT A

Machine Translated by Google



The undersigned Rector of the ANGLO ESPAÑOL School, a private establishment with an Operating License through Resolution No. 28970 of June 22, 2018 of the Secretary of Education of Antioquia for all its programs,
NIT: 811.032.582-4

**HEREBY STATES THAT:**

Mr. **SEBASTIÁN CORREA MORALES** with **CC 1128268360** has enrolled the child **LIAM SEBASTIÁN CORREA ESCOBAR** in the transition grade through the Psychopedagogical Department in charge of the student admission process.

To date, the school has this space, but the student must enter the institution starting Monday, April 21, 2025, after the Easter break.

Otherwise, the College is not committed to reserving the place.

This certificate is issued at the request of the interested party.

Given in El Carmen de Viboral on the 7th day of the month of April 2025.

**Rubén Darío Orozco Palacio CC**
**6.814.475 of Sincelejo Rector**

Vereda Aguas Claras • Km. 1 entrada El Canadá • Vía El Carmen de Viboral
Teléfono: 407 90 33 • Whatsapp: 324 566 59 49 • secretaria@angloesp.edu.co
www.angloesp.edu.co



El suscrito Rector del Colegio ANGLO ESPAÑOL, establecimiento privado con Licencia de Funcionamiento mediante Resolución No. 28970 del 22 de junio de 2018 de la Secretaria de Educación de Antioquia para todos sus programas, NIT: 811.032.582-4

## HACE CONSTAR QUE:

El señor **SEBASTIÁN CORREA MORALES** con **C.C 1128268360** ha inscrito al grado transición al niño **LIAM SEBASTIÁN CORREA ESCOBAR** a través de la dirección Psicopedagógica encargada del proceso de admisión de los estudiantes.

A la fecha, el Colegio dispone de este cupo, pero el estudiante debe ingresar a la Institución a partir del lunes 21 de abril de 2025 después del receso de Semana Santa.

De otra manera, el Colegio no se compromete con la reserva del cupo.

Esta constancia se expide a solicitud del interesado.

Dado en El Carmen de Viboral a los 07 días del mes de abril de 2025.

**Rubén Darío Orozco Palacio**
**C.C 6.814.475 de Sincelejo**
**Rector**

Vereda Aguas Claras • Km. 1 entrada El Canadá • Vía El Carmen de Viboral
Teléfono: 407 90 33 • Whatsapp: 324 566 59 49 • secretaria@angloesp.edu.co
www.angloesp.edu.co

EXHIBIT B





---------- Forwarded message ---------
From: **sebastian correa** <correa.m.sebastian@gmail.com>
Date: Tue, Dec 17, 2024, 10:56 PM
Subject: Re: Me informas de mi hijo
To: Juliana Escobar <Escobar.Juliana@live.com>


I downloaded and sent a message over there. Call when ██ L.C. ██ is available

On Tue, Dec 17, 2024, 10:37 PM Juliana Escobar <Escobar.Juliana@live.com> wrote:

> You can download Appclose app. Same one we started using before
>
>> On Dec 17, 2024, at 10:22 PM, sebastian correa <correa.m.sebastian@gmail.com> wrote:
>>
>> I do not understand your ask, because i was already calling by WhatsApp, there are  free applications, like skype or Zoom, things like that,
>>
>> or they are paid versions of apps like
>> https://www.ourfamilywizard.com/plans-and-pricing
>> and
>> https://talkingparents.com/pricing
>>
>> just pick whatever you are gonna allow me to use and ill follow, I'm not the one making nonsense request
>>
>>
>> El mar, 17 dic 2024 a las 21:57, Juliana Escobar (<Escobar.Juliana@live.com>) escribió:
>>
>>> There are few free ones, you can pick, let me know and I'll download it and have him call you.
>>>
>>>> On Dec 17, 2024, at 8:35 PM, sebastian correa <correa.m.sebastian@gmail.com> wrote:
>>>>
>>>> Im not the one blocking my access to L.C. Is you. Pick one that you are not gonna complain and ill use it. Want to see my son.  There is no justification for this.
>>>>
>>>>> On Tue, Dec 17, 2024, 8:43 AM Juliana Escobar <escobar.juliana@live.com> wrote:
>>>>>
>>>>>> You can look for co parenting applications and let me know so I can facilitate video calls with L.C.
>>>>>>
>>>>>>> On Dec 16, 2024, at 10:55 AM, Juliana Escobar <escobar.juliana@live.com> wrote:

Esta bien, estudiando.

---

**From:** sebastian correa <correa.m.sebastian@gmail.com>
**Sent:** Monday, December 16, 2024 10:36 AM
**To:** Juliana Escobar <Escobar.Juliana@live.com>
**Subject:** Re: Me informas de mi hijo

Mi hijo que hace. Como esta?

On Sun, Dec 15, 2024, 10:24 AM Juliana Escobar
<Escobar.Juliana@live.com> wrote:

> Está bien, la tos es muy poca.
>
>> On Dec 15, 2024, at 10:14 AM, sebastian
>> correa <correa.m.sebastian@gmail.com>
>> wrote:
>>
>>
>> Juliana mi hijo como esta?
>>
>> On Sat, Dec 14, 2024, 5:31 PM Juliana Escobar
>> <Escobar.Juliana@live.com> wrote:
>>> <image0.jpeg>
>>>
>>> Sent from my iPhone
>>>
>>>> On Dec 14, 2024, at 5:24 PM,
>>>> sebastian correa
>>>> <correa.m.sebastian@gmail.co
>>>> m> wrote:
>>>>
>>>>
>>>> Mi hijo que hace?
>>>>
>>>> On Sat, Dec 14, 2024, 10:00 AM
>>>> Juliana Escobar
>>>> <Escobar.Juliana@live.com>
>>>> wrote:
>>>>> L.C. está bien, la medicina
>>>>> le ha funcionado. Está
>>>>> tomando steroids y
>>>>> nebulizaciones.

> On Dec 14, 2024, at 9:48 AM, sebastian correa <correa.m.sebastian@gmail.com> wrote:
>
>
> Como se te occurre que privarme de saber de mi hijo o verlo por video llamada es de alguna manera justifiable?? Vos tenes que tener algun desequilibrio por que eso no esta bien de ningun modo. A mi no me interesa nada de tu vida que no afecte a L.C. Y parece que he sido muy claro en eso.
> Me informas de mi hijo

EXHIBIT C





EXHIBIT D

 Outlook

---

**Re: Correa/Escobar - Petitioner's Access to Child**

**From**  Edgar L. Fankbonner <fankbonner@gmail.com>

**Date**  Sat 3/8/2025 10:08 AM

**To**    Camilla Redmond <credmond@gkmrlaw.com>

**Cc**    Richard Min <rmin@gkmrlaw.com>; Michael Banuchis <MBanuchis@gkmrlaw.com>; Caroline Shepard <cshepard@gkmrlaw.com>

---

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Camilla,

I conferred with my client. I think there was some confusion as to the scope of the access order. My client will answer any WhatsApp calls from your client at the appointed times of 7-8pm M-F and 10-11 S/S, as called for by the order, but she cannot take calls at other times.

Thanks and best regards,
EF

On Fri, Mar 7, 2025 at 1:03 PM Camilla Redmond <credmond@gkmrlaw.com> wrote:
Counsel,

I have been informed that your client has been avoiding my client's calls and is still insisting on using an app other than WhatsApp.

As a friendly reminder, we filed a consent order, which was granted by the Court on January 17, 2025 (Dkt. 26), specifically outlining that my client is entitled to daily video calls with his son from 7:00 PM to 8:00 PM on weekdays, along with additional calls from 10:00 AM to 11:00 AM on weekends. The order also explicitly states that these calls are to take place on WhatsApp.

Please remind your client to comply with the federal court order. Should she continue to ignore my client's calls, we will have no choice but to seek court intervention.

Best,
Camilla

**Camilla Redmond Costa | Green Kaminer Min & Rockmore LLP**
420 Lexington Ave. Ste. 2821 | New York, NY 10170
O: 212.681.6400 | F: 212.681.6999
credmond@gkmrlaw.com | www.gkmrlaw.com
_____
**ATTENTION:**

This electronic message transmission contains information from a law firm which may be confidential or privileged.  This information is intended to be for the use of the individual or entity named above.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.  You should delete the message and attachments without printing, copying, forwarding or saving them.  If you have received this electronic transmission in error, please notify the sender immediately.

Disclosure under IRS Circular 230: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and may not be used, for the purpose of avoiding tax-related penalties under federal, state or local tax law or promoting, marketing or recommending to another party any transaction or matter addressed therein.

--

**Edgar L. Fankbonner, Esq.**
Criminal Defense and Immigration Law
GOLDBERGER & DUBIN, PC
401 Broadway, Ste. 306
New York, New York 10013
Tel.: (212) 431-9380
Mobile / Español: (917) 796-7406
Fax: (212) 966-0588

This email communication and any files transmitted with it contain privileged and confidential information from the office of attorney Edgar L. Fankbonner and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

 Outlook

## Re: Correa Morales v. Escobar Restrepo - Case No. 1:24-cv-07951-NCM-TAM

**From** Camilla Redmond <credmond@gkmrlaw.com>

**Date** Sun 12/15/2024 3:06 PM

**To** gnd401@aol.com <gnd401@aol.com>

**Cc** Richard Min <rmin@gkmrlaw.com>; Michael Banuchis <MBanuchis@gkmrlaw.com>

Dear Mr. Fankbonner,

It has been brought to our attention that your client has been limiting our client's access to his child and has not responded to any of our client's calls since December 9, 2024.

Further, our client wanted to visit his child in New York in November and again this past weekend, but your client refused to allow him to see his child on both occasions.

In the interest of providing consistency for both the parties and the child, we propose that, starting today, Mr. Correa is to have daily video calls with his son from 7:00 PM to 8:00 PM, and additional morning calls from 10:00 AM to 11:00 AM on Saturday and Sundays. Please let us know if this schedule works for your client and the child.

Should we be unable to resolve this matter amicably, we will have no choice but to seek the Court's intervention.

As per my previous email, please also advise as to your availability tomorrow or Tuesday for a call to discuss the joint discovery schedule.

Best,
Camilla

**Camilla Redmond Costa | Green Kaminer Min & Rockmore LLP**
420 Lexington Ave. Ste. 2821 | New York, NY 10170
O: 212.681.6400 | F: 212.681.6999
credmond@gkmrlaw.com | www.gkmrlaw.com
_____

ATTENTION:
This electronic message transmission contains information from a law firm which may be confidential or privileged. This information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. You should delete the message and attachments without printing, copying, forwarding or saving them. If you have received this electronic transmission in error, please notify the sender immediately. Disclosure under IRS Circular 230: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and may not be used, for the purpose of avoiding tax-related penalties under federal, state or local tax law or promoting, marketing or recommending to another party any transaction or matter addressed therein.