UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SEBASTIAN CORREA MORALES,

                *Petitioner*,

– against –

JULIANA ESCOBAR RESTREPO,

                *Respondent*.

**MEMORANDUM & ORDER**
24-cv-07951 (NCM) (TAM)

---

**NATASHA C. MERLE**, United States District Judge:

    Before the Court is respondent's motion to stay, ECF No. 64 ("Motion"), the Court's order granting the petition for return of the parties' child, L.C., to Colombia pursuant to The Hague Convention on the Civil Aspects of International Child Abduction ("Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001 *et seq.* ECF No. 62 ("Order"). For the reasons stated below, the Court **DENIES** the Motion but issues an administrative stay until April 14, 2025, to allow respondent to seek a stay from the United States Court of Appeals for the Second Circuit.

## BACKGROUND

    Petitioner filed this action against respondent pursuant to the Convention on November 15, 2024, seeking the return of L.C. to Colombia. Petition, ECF No. 1. After a hearing on the Petition, the Court issued its findings of fact and conclusions of law on March 28, 2025. The Court determined that respondent wrongfully retained L.C. in New York on May 16, 2024, in violation of the Convention. Order 1. Specifically, the Court

1

found that petitioner had established a *prima facie* case and respondent failed to establish a consent defense. Accordingly, the Court granted the petition, ordered L.C. returned to Colombia, and directed the parties to submit a joint proposed order of return by April 4, 2025. Order 33. The Clerk of Court entered judgment in favor of petitioner on March 31, 2025. ECF No. 63.

Thereafter, the parties filed a letter indicating that they were unable to agree on the mechanics of L.C.'s return to Colombia: petitioner proposed return by April 13, 2025, so that L.C. can attend school at the close of spring break,[1] whereas respondent proposed L.C. return on June 28, 2025, after the conclusion of his academic year in New York. Joint Ltr., ECF No. 65. Also on April 4, respondent moved the Court for a stay to allow respondent time to appeal the Court's Order. Mot. 1. Petitioner filed an opposition to the Motion. ECF No. 68 ("Opposition"). On April 7, 2025, respondent filed a notice of appeal of the Court's Order to the United States Court of Appeals for the Second Circuit. ECF No. 66.

## DISCUSSION

A stay is not "guaranteed" as a matter of right in cases under the Convention, *Chafin v. Chafin*, 568 U.S. 165, 179 (2013), but instead rests within the Court's discretion, *DiMartile v. Hochul*, 80 F.4th 443, 456 (2d Cir. 2023).[2]

Courts must consider the traditional stay factors in assessing a stay request:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant

---

[1] Respondent submitted a letter from a school in Colombia where he has secured a place for L.C. to begin attending on April 21, 2025. Opp'n 8.

[2] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

2

> will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Chafin*, 568 U.S. at 179 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Applying these factors ensures "individualized treatment" in each case—otherwise, "routine stays" would "conflict with the Convention's mandate of prompt return to a child's country of habitual residence." *Chafin*, 568 U.S. at 178–79. The "first two of the four factors are the most critical," and the movant bears the burden to show that a stay is warranted. *Tereshchenko v. Karimi*, No. 23-cv-02006, 2024 WL 195547, at *2 (S.D.N.Y. Jan. 18, 2024) (citing *New York v. U.S. Dep't. of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020)).

Here, respondent has not established that the *Chafin* factors warrant a stay of the Court's Order pending appeal.

## I. Factor 1: Success on the Merits

The first factor—success on the merits—requires the movant to demonstrate that the "chance of success on the merits is more than a mere possibility." *DiMartile*, 80 F.4th at 456. At this time, respondent mostly raises issues as to the Court's credibility and factual determinations, and does not raise questions of law. Specifically, respondent's counsel "anticipate[s]" that the appeal will challenge the Court's findings as to the credibility of petitioner and his witness, parenting counselor Elizabeth Gomez. Mot. 2. Respondent contends that the Court erred by finding petitioner's testimony credible in light of a "discrepancy" between the verified petition and petitioner's testimony regarding the conditions he placed on L.C.'s relocation; inaccurate addresses listed in the divorce complaint filed in petitioner's name in New Jersey; and petitioner's testimony that respondent's move to the United States was only temporary. Mot. 2. As to Gomez,

3

petitioner argues that her credibility was "compromised" in part because she recalled more details on direct than on cross examination and was paid by petitioner to testify at the hearing. Mot. 2.

"[A] trial judge's credibility determinations are entitled to special deference" such that "[w]hether to credit one witness over the other is entirely within the province of the district court as the trier of fact." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 670 (2d Cir. 2023). This is "because only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* Indeed, this may cause the court to credit or discredit some but not all parts of a single witness's testimony. *Id.* at 671. Only where a credibility determination involves "baldly crediting" testimony that is "implausible on its face or irreconcilable with reliable extrinsic evidence," will that determination lie outside the bounds of the trial court's discretion. *Id.* at 670.

Respondent is not likely to succeed in challenging the Court's credibility determinations as to petitioner and Gomez.

First, respondent points to different aspects of petitioner's evidence to argue, presumably, that the Court should not have credited *any* of his testimony. Specifically, respondent points to the New Jersey divorce complaint, which respondent argues listed inaccurate addresses for petitioner and respondent, as well as petitioner's original pleading, which respondent argues omitted allegations that he made in court. However, the Court viewed petitioner's demeanor during his testimony as well as considered whether corroborating evidence did or did not support his testimony when making its

4

determinations as to petitioner's credibility. In its assessment, the Court did not find petitioner entirely incredible.

Second, respondent argues that having discredited one portion of petitioner's testimony—that respondent's trip was "exploratory"—the Court erred in finding other portions of petitioner's testimony credible. Indeed, the Court found petitioner's testimony regarding the trip was not credible in light of respondent's testimony, which the Court credited instead. Order 20–21. That the Court found one portion of petitioner's testimony not credible, while crediting other portions, does not suggest that respondent will succeed on the argument that the Court's credibility determinations were "implausible" or "irreconcilable" with the record. *See JTH Tax*, 62 F.4th at 670; Order 21–22.

The same is true for respondent's contention that the Court improperly credited Gomez's testimony. Respondent argues that the Court should have discredited the entirety of Gomez's testimony and addressed portions of the record that compromised her credibility. Similar to its assessment of petitioner's credibility, after assessing the demeanor of Gomez during her testimony, the Court credited some of her corroborating testimony. The Court did not, and was not required to, identify each statement it credited or discredited of Gomez's testimony. *Cf. Najjar Grp., LLC v. W. 56th Hotel LLC*, 850 F. App'x 69, 75 n.4 (2d Cir. 2021) (explaining that Federal Rule of Civil Procedure 52 "does not require either punctilious detail or slavish tracing of the claims issue by issue and witness by witness" or that a "district court mention evidence it considered to be of little value"). However, the Court did rely on certain limited portions of Gomez's testimony which it found credible and supported by the other evidence in the record. *See, e.g.*, Order 27 (relying on Gomez's testimony that the parties discussed Florida as corroborating

5

documentary evidence and respondent's testimony). Further, even though respondent did not object to Gomez's testimony as implicating respondent's psychotherapist privilege, or establish that it indeed did implicate that privilege, the Court did not rely on Gomez's testimony as to respondent's statements made to Gomez in the context of the patient-psychotherapist relationship. Order 6 n.4.

Next, respondent argues that the Court's reliance on out-of-circuit caselaw regarding the effect of a child's age on acclimatization under the Convention is misguided and that the Court's determination on this point is unsupported by the record. Mot. 3. Specifically, respondent contends that this issue can only be supported by expert testimony regarding child development and psychology, which was not offered at the hearing. Mot. 3. Respondent provides no support for this contention. Even so, the Court found that L.C. had not acclimatized to life in the United States for various reasons, including reasons identified by the Supreme Court as relevant to "older children capable of acclimating to their surroundings." *Monasky v. Taglieri*, 589 U.S. 68, 78 n.3 (2020); *see* Order 24–25. Specifically, the Court considered the length of time L.C. spent in the United States prior to the wrongful retention and the extent of his social activities and schooling during that time, L.C.'s ongoing ties with family and healthcare services in Colombia, and L.C.'s language proficiency in English. Order 24.

Accordingly, respondent has not established that her likelihood of success on the merits "is more than a mere possibility," *DiMartile*, 80 F.4th at 456, and the first factor counsels against a stay.

## II.     Factors 2 & 3: Injury

Regarding the second *Chafin* factor, "courts consider irreparable injury to both the movant and the child[.]" *Royal Borough of Kensington & Chelsea v. Bafna-Louis*, No. 22-cv-08303, 2023 WL 3976663, at *2 (S.D.N.Y. June 13, 2023). The third factor concerning "injury to the non-movant" also encompasses any injury to the child and the petitioner that may result from the grant or denial of a stay. *Eidem v. Eidem*, No. 18-cv-06153, 2019 WL 13243081, at *2 (S.D.N.Y. May 28, 2019) ("[I]n the Hague Convention context, courts have also considered injury to the children under the rubric of the second factor (and/or the third factor, injury to the non-movant).").

Respondent argues that "[t]here is no reason to believe that the child or the parties will suffer harm if the child remains in the U.S. while Ms. Escobar seeks appellate review" because petitioner is a citizen of the United States and has visited L.C. here on multiple occasions. Mot. 3. To the contrary, a delay in the return of L.C. to his habitual residence is injurious to L.C. and petitioner. Having found that Colombia is L.C.'s place of habitual residence, a stay would only prolong his absence and thereby "conflict with the Convention's mandate of prompt return to a child's country of habitual residence." *Chafin*, 568 U.S. at 178. Further, petitioner has already experienced substantial injury and will continue to experience injury as long as these legal proceedings continue. Respondent wrongfully retained L.C. in the United States nearly a year ago and petitioner has allegedly had difficulty having continued contact with L.C. even after the filing of this litigation. *See* Opp'n Exs. B (email exchange between parties regarding video call logistics), C (screenshots of missed video calls from petitioner to respondent), D (email exchange

7

between counsel regarding petitioner's video calls with L.C.); Pet. Ltr., ECF No. 69 (alleging violations of consent order as to petitioner's video calls with L.C.).

Moreover, petitioner's stated plan to enroll L.C. in school following the spring break provides "a potentially opportune time for [L.C.] to reintegrate" to life in Colombia. *Tatari v. Durust*, No. 24-cv-06930, 2025 WL 416879, at *1 (E.D.N.Y. Feb. 6, 2025). Thus, while L.C.'s transition back to Colombia will be impactful at any time, the possibility of this prompt reintegration may help ease L.C.'s relocation.

Respondent also argues that she and L.C. will be harmed absent a stay because petitioner may "refuse to authorize the child's return to the U.S., irrespective of Ms. Escobar's success on appeal." Mot. 3. Respondent provides no support for this statement. Respondent's speculation does not constitute a showing of irreparable harm. The Court has no basis to believe the petitioner will not comply with lawful court orders or may try to evade this legal process. Also, while a successful appeal might lead to concerns with "shuttling" L.C. "back and forth between parents and across international borders," this potential does not counsel for a stay in light of the fact that an unsuccessful appeal would merely prolong the Convention violation and make any later return of L.C. to Colombia "more difficult." *Eidem*, 2019 WL 13243081, at *2.

To the extent respondent argues that L.C.'s return to Colombia would moot her appeal, that argument is without merit. Cases pursuant to the Convention do not "become moot upon return." *See Chafin*, 568 U.S. at 178. Respondent has filed a notice of appeal, and may continue litigating that appeal.

Furthermore, it is worth noting that, despite respondent's reasons for leaving Colombia to find work, she has not indicated that she would be unable to visit L.C. in

8

Colombia or ensure his well-being—indeed, she is a Colombian citizen, owns property there, has multiple family members who reside there, and has spent prolonged periods of time in the country in the past. *See* Order 2–3; Tr. 76:16–21, ECF No. 61; Tr. 267:19–268:6, ECF No. 60; *Eidem*, 2019 WL 13243081, at *2.

Accordingly, the second and third factors weigh against a stay of the Court's Order pending appeal.

### III.  Factor 4: Public Interest

The public interest in Hague Convention cases "is primarily defined by the treaty itself, the express purpose of which is to secure the prompt return of children wrongfully removed to or retained in any Contracting State." *Bafna-Louis*, 2023 WL 3976663, at *3; *see also Tereshchenko*, 2024 WL 195547, at *5 ("American parents and their children benefit from this country's participation in and vigorous enforcement of the Hague Convention."). Respondent's contention that the public interest lies in her right to appeal the Court's Order is not inconsistent with the Convention. *See* Mot. 3. As discussed, respondent may pursue her appeal even upon L.C.'s return to Colombia. Indeed, she may seek a stay directly from the Second Circuit. Like the first, second, and third factors, the fourth factor accordingly weighs against a stay.

## CONCLUSION

For the reasons stated above, respondent's Motion is **DENIED**. However, an administrative stay shall issue until April 14, 2025, to allow respondent to seek a stay from the United States Court of Appeals for the Second Circuit. Barring such a stay, the petitioner shall submit a proposed order of return, including precise travel details, by 12:00 p.m. on April 15, 2025. Petitioner is directed to confer with respondent and, to the

extent possible, come to an agreement as to the proposed travel details. To the extent petitioner requires the Court's assistance with the issuance of L.C.'s passport, petitioner may make a new request with support for the Court's authority to order any such relief as requested. *See* Joint Ltr. 1. The child shall be returned to Colombia no later than April 18, 2025.

Petitioner may file a motion for attorneys' fees pursuant to 22 U.S.C. § 9007(b) within 14 days of the Second Circuit's resolution of respondent's appeal.

**SO ORDERED.**

     */s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated:    April 9, 2025
           Brooklyn, New York